## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

**REGINA PARKS,**
   *an individual,*

                    Plaintiff,

                                                Case No:
vs.                                             Hon.

**WAYNE COUNTY,** *a political subdivision of the*
*State of Michigan,* **RAPHAEL "RAY"**
**WASHINGTON,** *in his individual and official*
*capacities, Jointly and severally*

                    Defendants.

---

**DEBORAH GORDON LAW**
Deborah L. Gordon (P27058)
Elizabeth Marzotto Taylor (P82061)
Sarah Gordon Thomas (P83935)
Morry Daniel Hutton (P81188)
Attorneys for Plaintiff
33 Bloomfield Hills Parkway, Suite 220
Bloomfield Hills, Michigan 48304
(248) 258-2500
dgordon@deborahgordonlaw.com
emarzottotaylor@deborahgordonlaw.com
sthomas@deborahgordonlaw.com
mhutton@deborahgordonlaw.com

---

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff **Regina Parks,** by and through her attorneys Deborah Gordon Law,

complains against Defendants Wayne County and Raphael "Ray" Washington as

follows:

1

1.     This is an action by Plaintiff Regina Parks against Defendants for sex harassment, discrimination, and retaliation in violation of Title VII, 42 U.S.C. §2000(e), *et. seq.,* and Michigan state law.

## JURISDICTION AND PARTIES

2.     Plaintiff Regina Parks is an individual domiciled in the State of Michigan and the Eastern District of Michigan.

3.     Defendant Wayne County (hereafter referred to as "Defendant County") is a political subdivision of the State of Michigan located in the Eastern District of Michigan.

4.     Defendant Raphael "Ray" Washington (hereafter referred to as "Defendant Washington") is an individual, who at all relevant times held the position of Sheriff of Wayne County and is domiciled in the State of Michigan and the Eastern District of Michigan.

5.     The Court has federal subject-matter jurisdiction in this case pursuant to 28 USC § 1331, and 28 USC § 1343, because the complaint states a claim that arises under the laws of the United States. The Court also has supplemental jurisdiction over Plaintiff's state law claim under and 28 USC § 1367 because this claim is so related to the federal claim that it is part of the same case or controversy.

6.     Pursuant to 28 USC § 1391(b), venue is proper in this Court as it is in the district in which Defendants conduct business and in which the events giving rise to the claims took place.

## FACTUAL BACKGROUND

7.     Plaintiff was employed by Defendant County in the Sheriff's Office between 2019 and 2024.

8.     Under Defendant Washington's predecessor, former Sheriff Benny Napoleon, Plaintiff held the positions of Compliance Officer and Community Outreach Director.

9.     After former Sheriff Napoleon's death in 2020, Defendant Washington was appointed to the position of Sheriff of Wayne County on January 15, 2021.

10.     Defendant Washington was subsequently elected to the position of Sheriff in a special general election on November 8, 2022, and a general election on November 5, 2024.

11.     Plaintiff maintained her employment as Community Outreach Director for the Wayne County Sheriff's Office when Defendant Washington assumed the position of Sheriff in January 2021.

12.     Plaintiff's job duties as Community Outreach Director required her to spend a considerable amount of time working closely, and one-on-one with Defendant Washington.

13.     Almost immediately upon assuming the role of Sheriff, Defendant Washington began sexually harassing Plaintiff, along with several other female employees.

3

14.     Between January 2021 and her termination in 2024, Plaintiff was subjected to sexual harassment on a routine basis, in the form of sexual comments, unwanted physical touching, propositions for sexual activity, and being shown pornographic material.

15.     Throughout 2021, 2022, and 2023, Defendant Washington:

    a.     touched or struck Plaintiff on the buttocks several times;

    b.     rubbed and touched her stomach and thighs over and under her clothing; and

    c.     repeatedly made lewd and sexual comments about Plaintiff's appearance and body, including that he "didn't know she had all that back there", that she was "really wearing that outfit", and that she would look more sexually attractive if she gained weight;

16.     In 2021, Defendant Washington told Plaintiff that he doubted he could sexually penetrate his child's mother, because her body was scarred.

17.     Plaintiff indicated that Defendant Washington's conduct was unwelcome and inappropriate, for example by swatting his hands away and asking him to stop making sexual comments to her, but he persisted.

18.     Defendant Washingon's history and practice of sexual harassment of Plaintiff and other female employees is well-known throughout the County and the Sheriff's Office, including at the highest levels of management.

19.     Indeed, it has been widely reported that at least four women had accused Defendant Washington of sexual harassment and misconduct between 2002 and 2016:

a.      A female employee of the Sheriff's Office sued Washington in 2016 claiming that he repeatedly asked her for massages at work;

b.      A female employee of the Sherriff's Office filed a harassment claim against Washington in 2010 for persistently asking her out on a date during an offsite event;

c.      In 2008, a member of the public complained that, when she visited a Detroit Police Department Office where Washington was then working, he made lewd comments to her about her appearance, touched her leg and thigh, and asked to see her "panties" and for her to bend over;

d.      In 2002, Washington, then a Lieutenant with the Detroit Police Department, was investigated and charged with misconduct for conduct unbecoming an officer and lying to the Southfield Police, after his ex-wife reported him for "peeping in [her] windows" and then becoming "abusive, screaming at her and cursing" after the incident. *See* Ross Jones, *Wayne County Sheriff Raphael Washington ducks questions over harassment claims* (WXYZ Detroit, June 8, 2022) https://www.wxyz.com/news/local-news/investigations/wayne-

5

county-sheriff-raphael-washington-ducks-questions-over-

harassment-claims.

20.     At Plaintiff's request, in 2022, Defendant Washington's Executive
Assistant began keeping the Sherriff's office door open while female employees,
including Plaintiff, met with Defendant Washington; stood outside the door; and
invented reasons to enter or interrupt such meetings, in attempts to disrupt his sexually
inappropriate behaviors.

21.     Defendant County took no action to investigate or put a stop to
Defendant Washington's well-known and widespread sexual harassment of female
employees.

22.     Instead, and particularly as Defendant Washington sought to be elected,
and then re-elected in 2022 and 2023, Plaintiff, along with other Wayne County
employees, were expected to downplay, conceal, or mitigate Defendant Washington's
sexual misconduct towards women in the workplace.

23.     For one example, in 2022, it was well-known by employees and leadership
in the Sheriff's Office that another female executive employee that worked for the
Sheriff's Office had been repeatedly sexually harassed by Defendant Washington
throughout the 7 months of her employment.

24.     Defendant Washington repeatedly referred to the female executive as
"Baby" or "Babe", asked her to stay in his hotel room several times, and requested that

she wear certain articles of clothing that he found sexually attractive, among other behaviors.

25.     In lieu of any attempt by Defendant County to investigate or put a stop to Defendant Washington's rampant sexual harassment of female employees, when it became known that the female executive complained to Chief of Staff Turner about being sexually harassed by Defendant Washington, Plaintiff and other female employees were expected to accompany Defendant Washington when the other female executive was present and assume some of her duties.

26.     On May 22, 2022, at a black-tie gala Plaintiff attended along with other Wayne County officials, including Defendant Washington and the Wayne County Chief of Staff Michael Turner, Defendant Washington put his hand up Plaintiff's dress and touched her upper thigh.

27.     At least one other high-ranking County official witnessed Defendant Washington's behavior toward Plaintiff on May 22, 2022.

28.     On the evening of February 21, 2023, Defendant Washington called Plaintiff's cell phone and propositioned her for sex, stating that he wanted to "fuck" her.

29.     On February 22, 2023, Defendant Washington repeatedly called and texted Plaintiff, and stated that although he sent all other employees home due to inclement weather, he wanted Plaintiff to come to the office.

30. In light of Defendant Washington's statements to her on February 21, Plaintiff was terrified to report to the office on February 22, 2023, where she would be alone with Defendant Washington.

31. On or about February 22, 2023, Plaintiff reported Defendant Washington's conduct of the 21st and 22nd to Chief of Staff Turner.

32. Chief of Staff Turner admitted that Defendant Washington's conduct was unacceptable, and suggested that Plaintiff record him to obtain evidence of sexual harassment.

33. On February 27, 2023, Defendant Washington summoned Plaintiff to his office.

34. Plaintiff told Defendant Washington that his statements to her on February 21, 2023 had frightened her.

35. Defendant Washington told Plaintiff that he had been drunk at the time, and attempted to downplay his conduct, saying he had "only asked her for a kiss".

36. During the conversation in his office, Defendant Washington rubbed Plaintiff's thighs. Defendant Washington hugged Plaintiff and kissed her on the lips.

37. Plaintiff changed the subject to work matters and extricated herself from the meeting.

38. On October 3, 2023, Plaintiff and other Wayne County officials, including Defendant Washington and Chief of Staff Turner, attended the film premiere of "First Lady of BMF: The Tonesa Welch Story".

39.     At a VIP event before the film, Defendant Washington made sexual comments to Plaintiff about other attendees, like "I want to get with her. She looks good." Plaintiff did her best to stop his lewd commentary.

40.     On the way into the film, Defendant Washington touched Plaintiff's buttocks in the elevator. As she had done before, Plaintiff swatted his hands away and indicated the touching was unwelcome.

41.     Plaintiff was seated next to Defendant Washington for the film.

42.     Before the film started, Defendant Washington showed Plaintiff a video on his cell phone of a woman performing oral sex on him, which clearly showed his naked genitalia.

43.     Plaintiff was in shock and asked why Defendant Washington would show her such a video. Defendant Washington told Plaintiff, "You have to share the love."

44.     After the event, Plaintiff informed Chief of Staff Turner of Defendant Washington's behavior.

45.     In early April 2024, Plaintiff received a phone call in her office from a woman who claimed she had made a report of sexual harassment to Defendant Washington's Executive Protection Officer.

46.     The woman informed Plaintiff that she had been sexually harassed by a subordinate of Defendant Washington's Executive Protection Officer, and that he had done nothing to investigate or assist her with her complaint.

47.     Plaintiff directed the female employee to put her concerns in writing, which she said she would do.

48.     After the call ended, Plaintiff informed Chief of Staff Turner of the employee's report of sexual harassment.

49.     A few days later, Plaintiff received a call from Defendant Washington, who questioned her about the call.

50.     Defendant Washington was angry that Plaintiff took the employee's information and told Plaintiff she should have immediately terminated the call by hanging up on the employee.

51.     Plaintiff informed Chief of Staff Turner about Defendant Washington's reaction.

52.     In light of Defendant Washington's behavior and the utter lack of action from Turner about her own reports, Plaintiff feared retaliation if she complained further about the harassment she was experiencing on a regular basis.

53.     Between April 2024 and November 2024, Plaintiff did her best to avoid situations where she would be alone with Defendant Washington, but his inappropriate conduct continued as before when she did have contact with him.

54.     By November 2024, Plaintiff's frustration with and opposition to Defendant Washington's conduct was increasingly clear.

55.     Because Plaintiff opposed his conduct and refused to submit to his sexual advances, on November 13, 2024, Defendant Washington announced a restructuring of the Sheriff's Office that would result in the removal of some of Plaintiff's job duties.

56.     After the meeting on November 13, 2024, Plaintiff vented her frustration to Defendant Washington's Executive Assistant.

57.     Plaintiff told Chief of Defendant Washington's Executive Assistant that she was upset about the meeting and being forced to endure years of sexual harassment by Defendant Washington.

58.     Plaintiff also stated that she had recorded her conversation with Defendant Washington on February 27, 2023, which directly implicated Washington in sexual misconduct towards her.

59.     Defendant Washington's Executive Assistant immediately informed Defendant Washington of her conversation with Plaintiff.

60.     Plaintiff swiftly received a call from Chief of Staff Turner, who was extremely concerned about the existence of a recording that could expose Defendant Washington's sexual misconduct and damage public perception of him.

61.     Turner was also fearful that he would be punished for encouraging Plaintiff to record Washington.

62.     Chief of Staff Turner demanded that Plaintiff apologize for accusing Defendant Washington of sexual harassment and threatened her with termination if she refused to do so.

11

63. During the call, Chief of Staff Turner stated several times that Defendant Washington would fire Plaintiff for her accusations, and that the matter was "out of his hands now" and that he "couldn't fix it".

64. Plaintiff refused to apologize and insisted that Chief of Staff Turner knew first-hand that her allegations, and those of other female employees were true, and reminded him that they had discussed this on several occasions.

65. As a result, Plaintiff was terminated from her employment on November 14, 2024.

66. Plaintiff was never provided with any reason for her termination other than her opposition to Defendant Washington's conduct.

67. Plaintiff learned she was fired when an employee of Defendant County contacted her about returning County property, such as her badge and computer.

68. Defendants had no legitimate business reason for Plaintiff's termination and instead fired her because reported and opposed Defendants' conduct.

69. Plaintiff obtained a Right to Sue letter regarding her claims from the Equal Employment Opportunity Commission on December 6, 2024.

## COUNT I
### Sexual Harassment/Hostile Work Environment Discrimination in Violation of Title VII
*as against Defendant Wayne County*

70. Plaintiff repeats and realleges all foregoing paragraphs as if they were set forth fully herein.

71.     At all relevant times, Plaintiff was an employee and Defendant Wayne County was her employer within the meanings set forth in Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000(e), *et. seq.* ("Title VII").

72.     During the course of Plaintiff's employment, Plaintiff was subjected to unwelcome comments, speech, touching, and other actions of an offensive and sexual nature, on the basis of her sex, and Defendant Wayne County made Plaintiff's subjection to the same a term or condition of her employment.

73.     Plaintiff also observed and learned that other female employees were similarly subjected to unwelcome comments, speech, touching, and other actions of an offensive and sexual nature, on the basis of sex, as term or condition of employment.

74.     Defendant Wayne County had notice of the unwelcome sexual conduct Plaintiff and other female employees were subjected to and did not stop it.

75.     Defendant Wayne County is strictly liable for the conduct of Defendant Washington.

76.     The unwelcome sexual comments and contact were intentional and willful, in deliberate disregard of, and with reckless indifference to the rights and sensibilities of Plaintiff.

77.     Defendant Wayne County's treatment of Plaintiff was severe and/or pervasive and created a hostile work environment.

78.     As a direct and proximate result of Defendant Wayne County's unlawful conduct described above, the terms, conditions and privileges of Plaintiff's employment were adversely affected.

79.     As a further direct and proximate result of Defendant Wayne County's unlawful conduct described above, Plaintiff sustained injuries and damages including but not limited to the loss of earnings and earning capacity; mental and emotional distress, including anxiety and mental anguish, humiliation and embarrassment; loss of personal and professional reputation; and loss of the ordinary pleasures of everyday life.

<u>**COUNT II**</u>
**Sexual Harassment/Hostile Work Environment Discrimination**
**in Violation of the Elliot-Larsen Civil Rights Act M.C.L. § 37.2101 *et seq.***
*as against all Defendants*

80.     Plaintiff hereby incorporates all prior paragraphs as if they were set forth fully herein.

81.     At all times material hereto, Plaintiff was an employee and Defendants were employers covered by and within the meaning of the Elliot-Larsen Civil Rights Act, MCL 37.2101, *et seq*.

82.     At all times material hereto, Defendant Washington was an employee and/or agent of Defendant Wayne County.

83.     During the course of her employment, Defendants subjected Plaintiff to unwanted comments, speech, touching, and other actions of an offensive and sexual

14

nature, and by their words and conduct, made Plaintiff's subjection to the same a term or condition of her employment.

84.     Defendants' treatment of Plaintiff was severe and/or pervasive and created a hostile work environment.

85.     Defendants' actions were based on Plaintiff's sex.

86.     Defendants' unwelcome comments and contact were intentional and willful, in deliberate disregard of, and with reckless indifference to the rights and sensibilities of Plaintiff.

87.     As a direct and proximate result of Defendants' unlawful conduct described above, the terms, conditions and privileges of Plaintiff's employment were adversely affected.

88.     As a further direct and proximate result of Defendants' unlawful conduct described above, Plaintiff has sustained injuries and damages including but not limited to the loss of earnings and earning capacity; mental and emotional distress, including anxiety and mental anguish, humiliation and embarrassment; loss of personal and professional reputation; and loss of the ordinary pleasures of everyday life.

<u>**COUNT III**</u>
**Retaliation in Violation of Title VII**
*As Against Defendant Wayne County*

89.     Plaintiff hereby incorporates all prior paragraphs as if they were set forth fully herein.

90.     At all relevant times, Plaintiff was an employee and Defendant Wayne County her employer within the meanings set forth in Title VII of the Civil Rights Act of 1964, *as amended,* 42 U.S.C. § 2000(e), *et seq.*

91.     Plaintiff engaged in activity protected by Title VII when she complained of and opposed unlawful sexual harassment.

92.     As a result of her protected activity, Defendant Wayne County terminated her employment.

93.     The actions of Defendant and its agents were willful, intentional, in deliberate disregard of and with reckless indifference to the rights and sensibilities of Plaintiffs.

94.     As a direct and proximate result of those actions, the terms, conditions and privileges of Plaintiffs' employment were adversely affected, and Plaintiffs were unlawfully harassed, were subjected to an improper investigation among other adverse actions.

95.     As a direct and proximate result of Defendant's wrongful acts, Plaintiffs sustained injuries and damages including, but not limited to, loss of earnings and earning capacity, loss of career opportunities, loss of fringe and other benefits, outrage and humiliation, mental anguish, anxiety about their future, physical and emotional distress, loss of professional reputation and loss of the ordinary pleasures of everyday life.

**COUNT IV**
**Retaliation in Violation of the Elliott Larsen Civil Rights Act, M.C.L. § 37.2701(a) *et seq.***

*As Against All Defendants*

96.     Plaintiff hereby incorporates all prior paragraphs as if they were set forth fully herein.

97.     Plaintiff engaged in an activity protected by the ELCRA by opposing Defendant Washington's conduct as it occurred and by repeatedly reporting his conduct to Plaintiff's supervisor, Chief of Staff Michael Turner.

98.     Defendants knew of Plaintiff's engagement in that activity.

99.     Defendants took an adverse employment action against Plaintiff when they removed certain of her job duties and terminated her employment because she reported and opposed the conduct described above.

100.    Plaintiff's engagement in the protected activity motivated Defendants to take the adverse employment actions against her.

101.    As a direct and proximate result of Defendants' wrongful acts, Plaintiff sustained injuries and damages including, but not limited to, loss of earnings and earning capacity, loss of career opportunities, loss of fringe and pension benefits, outrage and humiliation, mental anguish, anxiety about her future, physical and emotional distress, loss of professional reputation and loss of the ordinary pleasures of everyday life.

## COUNT V
**Assault and Battery**
*As Against Defendant Washington*

102.    Plaintiff hereby incorporates all prior paragraphs as if they were set forth fully herein.

103.   The acts committed by Defendant Washington against Plaintiff described herein constitute assault and battery, actionable under the laws of Michigan.

104.   Defendant Washington committed nonconsensual acts of sexual touching as set forth above on dates on and after February 11, 2023, which resulted in harmful or offensive contact with the body of Plaintiff.

105.   Specifically, Defendant Washington committed acts which caused injury to Plaintiff by subjecting her to an imminent battery and/or intentional invasions of her right to be free from offensive and harmful contact, and said conduct demonstrated that Defendant had a present ability to subject Plaintiff to an immediate, intentional, offensive and harmful touching.

106.   Defendant Washington assaulted and battered Plaintiff by nonconsensual and unwanted striking, touching, grabbing, and rubbing of her stomach, legs, buttocks and kissing on the lips as set forth above.

107.   Plaintiff did not consent to the contact, which caused injury, damage, loss, and/or harm.

108.   As a direct and/or proximate result of the Defendant's actions, Plaintiff suffered and continues to suffer pain and suffering, pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, loss of enjoyment of life, physically manifested injuries including anxiety, depressions, sleep disorders, nightmares, psychological injuries, and physical injuries. Plaintiff was prevented and will continue

18

to be prevented from performing Plaintiff's daily activities and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earnings and earning capacity.

109.   In the alternative, the actions or inaction of Defendant were so reckless as to demonstrate a substantial lack of concern for whether an injury would result to Plaintiff and constitutes gross negligence that is the proximate cause of Plaintiff's damages. Plaintiff suffered and continues to suffer pain and suffering, pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, loss of enjoyment of life, physically manifested injuries including anxiety, depressions, sleep disorders, nightmares, psychological injuries, and physical injuries. Plaintiff was prevented and will continue to be prevented from performing her daily activities and obtaining the full enjoyment of life, and sustained and continues to sustain loss of earnings and earning capacity.

**RELIEF REQUESTED**

For all the foregoing reasons, Plaintiff demands judgment against Defendants as follows:

**A.   LEGAL RELIEF**

1.   Compensatory, economic and noneconomic damages in whatever amount she is found to be entitled;

2.   Exemplary damages in whatever amount she is found to be entitled;

3.     Punitive damages in whatever amount she is found to be entitled;

4.     A judgment for lost wages and benefits, past and future, in whatever amount she is found to be entitled; and,

5.     An award of interest, costs and reasonable attorney fees.

**B.     EQUITABLE RELIEF**

1.     A declaratory judgment establishing that Defendants violated Plaintiff's rights;

2.     An injunction ordering Defendants to correct the false representation;

3.     An injunction prohibiting further unlawful acts;

4.     An award of interest, costs, and reasonable attorney fees; and

5.     Any other equitable relief that is appropriate.

Dated: February 11, 2025

**DEBORAH GORDON LAW**
*/s/Deborah L. Gordon*
Deborah L. Gordon (P27058)
Attorneys for Plaintiff
33 Bloomfield Hills Parkway, Suite 220
Bloomfield Hills, Michigan 48304
(248) 258-2500
dgordon@deborahgordonlaw.com

# <u>JURY DEMAND</u>

Plaintiff **Regina Parks**, by and through her attorneys Deborah Gordon Law, hereby demands a trial by jury of all the issues in this case.

Dated: February 11, 2025

**DEBORAH GORDON LAW**
*/s/Deborah L. Gordon*
Deborah L. Gordon (P27058)
Attorneys for Plaintiff
33 Bloomfield Hills Parkway, Suite 220
Bloomfield Hills, Michigan 48304
(248) 258-2500
dgordon@deborahgordonlaw.com