## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

**REGINA PARKS,**
   *an individual,*

                    Plaintiff,

                                        Case No: 25-cv-10409
v.                                      Hon. Shalina D. Kumar

**WAYNE COUNTY,** *a political*
*subdivision of the State of Michigan,*
**RAPHAEL "RAY" WASHINGTON,**
*in his individual and official capacities,*
*Jointly and severally*

                    Defendants.

---

## DEFENDANT RAPHAEL "RAY" WASHINGTON'S
## MOTION FOR SUMMARY JUDGMENT

Defendant, Raphael "Ray" Washington ("Washington" or "Sheriff"), through

his attorneys Clark Hill PLC, moves this Court for summary judgment pursuant to

Fed. R. Civ. P. 56 on the basis that there is no genuine dispute as to any material fact

and Washington is entitled to judgment as matter of law.  In support of his Motion,

Washington relies on the attached brief in support.

WHEREFORE, Washington respectfully requests that this Court enter

judgment in his favor, dismiss Plaintiff's Complaint with prejudice, and grant

Washington its costs, attorney fees and any other relief this Court deems just.

Concurrence in the relief requested herein was sought, but Plaintiff does not concur in the relief requested.

Respectfully Submitted,

CLARK HILL PLC

By:     *s/Maria F. Dwyer*
        Maria F. Dwyer (P60946)
        Brian D. Shekell (75327)
        Nina M. Jankowski (P80558)
        Attorneys for Defendant
        500 Woodward Avenue, Suite 3500
        Detroit, Michigan 48226
        313-965-8399

DATE:  January 14, 2026

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

**REGINA PARKS,**
　　　*an individual,*

　　　　　　　Plaintiff,

　　　　　　　　　　　　　　　　Case No: 25-cv-10409
v.　　　　　　　　　　　　　　　　Hon. Shalina D. Kumar

**WAYNE COUNTY,** *a political*
*subdivision of the State of Michigan,*
**RAPHAEL "RAY" WASHINGTON,**
*in his individual and official capacities,*
*Jointly and severally*

　　　　　　　Defendants.

_____

## BRIEF IN SUPPORT OF DEFENDANT RAPHAEL "RAY" <u>WASHINGTON'S MOTION FOR SUMMARY JUDGMENT</u>

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................... ii

CONCISE STATEMENT OF THE ISSUE PRESENTED ......................................... iv

INTRODUCTION ............................................................................................... 1

STATEMENT OF MATERIAL FACTS .................................................................. 3

LEGAL ARGUMENT........................................................................................ 12

    I.    Plaintiff Cannot Establish a Prima Facie Case of Retaliation........................... 12

        A.    Plaintiff Did Not Engage in Protected Activity ......................................... 13

        B.    Any "Protected Activity" was Unknown to Washington. ............................. 14

        C.    The Restructuring of the Community Outreach Team Is Not an Adverse Action........ 15

        D.    Plaintiff Cannot Show a Causal Connection............................................. 16

    II.    Plaintiff Cannot Establish Pretext...................................................... 16

        A.    To The Extent Plaintiff is Relying On Alleged Incidents Which Occurred Prior to February 2022, Those Claims Are Time Barred.................................................. 19

        B.    Plaintiff Cannot Establish A Severe or Pervasive Work Environment........................ 20

    IV.    Plaintiff Cannot Establish a Claim for Assault and Battery ......................................... 22

CONCLUSION.................................................................................................... 24

# TABLE OF AUTHORITIES

## Cases

*Aplin v. Faurecia Interior Sys, Inc*, 2020 WL 7017385, at \*6 (E.D. Mich. July 30, 2020) ...............................................................................................................16

*Barrett v. Kirkland Community College*, 245 Mich. App. 306, 319 (2001)...............13

*Bell v. CSX Transp., Inc.*, 172 F. Supp. 2d 933, 937 (ED Mich 2001)....................19

*Bell v. Ohio State University*, 35 F.3d 240, 252-253 (2003) ...................................14

*Blizzard v. Marion Tech. Coll.*, 698 F.3d 275, 286 (6th Cir. 2012) ........................18

*Boumelhem v. BIC Corp*, 211 Mich. App. 175, 184 (1995) ...................................23

*Bowman v. Shawnee State Univ.*, 220 F.3d 456, 458–59, 464 (6th Cir. 2000) .......22

*Burnett v. Tyco Corp*, 203 F.3d 980, 983 (6th Cir. 2000) .......................................21

*Chambers v. Trettco, Inc*, 463 Mich. 297, 310 (2000) ............................................19

*Chandler v. Regions Bank*, 573 F. App'x 525, 530 (6th Cir. 2014)........................14

*Chen v. Wayne State Univ*, 284 Mich. App. 172, 201 (2009)...................................15

*Clark v. United Parcel Serv, Inc*, 400 F.3d 341, 352 (CA 6, 2005) ........................20

*Clark v. United Parcel Service, Inc*, 400 F.3d 341, (6th Cir. 2005)........................21

*Clay v. UPS, Inc.*, 501 F.3d 695, 707 (6th Cir. 2007) ...........................................21

*Espinoza v. Thomas*, 189 Mich. App. 110, 119 (1991) ..................................... 22, 23

*Garg v. Macomb County Community Mental Health Services*, 472 Mich. 263 (2005)...............................................................................................................19

*Haynie v. Michigan*, 468 Mich. 302, 312–13 (2003)...............................................19

*Kawaauhau v. Geiger*, 523 U.S. 57, 61–62 (1998) .................................................23

*Kinnard v. Rutherford Cnty. Bd. of Educ.*, 109 F. App'x 85, 93 (6th Cir. 2004) ....14

*Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139–41 (6th Cir. 1993) ........................14

*MacEachern v. Quicken Loans, Inc*, No 17-1005, 2017 WL 5466656, at \*3 (CA6 Oct 17, 2017) ...........................................................................................................17

*Majewski v. Automatic Data Processing, Inc.*, 274 F.3d 1106, 1117 (6th Cir. 2001) ......................................................................................................................18

*Major v. Village of Newberry*, 316 Mich. App. 527, 542 (2016) ...............................17

*McLemore v. Detroit Receiving Hosp. & Univ. Medical Center*, 196 Mich. App. 391, 396 (1992)..................................................................................................13

*Meyer v. Center Line*, 242 Mich. App. 560, 568–569 (2000)....................................12

*Mitan v. Neiman Marcus*, 240 Mich. App. 679, 682 (2000) ...................................13

*Mitchell v. Daly*, 133 Mich. App. 414, 426–427 (1984) ................................... 22, 23

*Nathan v. Great Lakes Water Auth.*, 992 F.3d 557, 568 (6th Cir. 2021).................22

*Pena v. Ingham County Road Comm'n*, 255 Mich. App. 299, 311 n 3 (2003).......21

*Quinto v. Cross & Peters Co*, 451 Mich. 358, 370 n 9 (1996)................................20

*Radtke v. Everett*, 442 Mich. 368, 381, 501 N.W.2d 155, 161 (1993)............. 18, 20

*Shaull v. Mich. Affiliated Health Care Sys.*, 1998 WL 1989810 (Mich. Ct. App. Sept 22, 1998)......................................................................................................21
*Town v. Mich. Bell Telephone Co*, 455 Mich. 688, 703-704 (1997)............................17
*Upshaw v. Ford Motor Co.*, 576 F.3d 576, 586 (6th Cir. 2009)..............................17

## <u>CONCISE STATEMENT OF THE ISSUE PRESENTED</u>

WHETHER DEFENDANT IS ENTITLED TO SUMMARY JUDGMENT WHERE THERE IS NO EVIDENCE THAT PLAINTIFF WAS RETALIATED AGAINST BECAUSE OF HER PARTICIPATION IN ANY ALLEGED PROTECTED ACTIVITY, SUBJECTED TO A SEXUALLY HOSTILE WORK ENVIRONMENT, OR ASSAULTED AND BATTERED.

Defendant answers: Yes

## **INTRODUCTION**

Plaintiff Regina Parks is a former appointee of the Wayne County Sheriff's Office's Executive Division and began her appointment under former Sheriff Benny Napoleon as the Director of Community Outreach. Following the passing of Sheriff Napoleon, Raphael "Ray" Washington was appointed as Wayne County Sheriff on January 15, 2021. After his re-election in 2024, Washington announced that he would be restructuring certain teams of the Executive Division, including the expansion of communications, recruiting, and community outreach.

Plaintiff was unappointed on November 14, 2024, for her turbulent, disruptive, and offensive response to Washington's restructuring announcement. Her behavior included entering the Sheriff's Executive Suite after the restructuring meeting – which is not her workspace – yelling profanities, pacing around the Suite, and patting her vagina saying, "I got this, this is what I got." Plaintiff's conduct was so egregious that she was encouraged to sit and calm down. Once Washington learned of Plaintiff's behavior that evening, he had no choice but to unappoint her, in accordance with Wayne County's Conduct Policy.

Three months later, Plaintiff filed this lawsuit alleging – for the first time – that during the nearly *four years* that Washington was Sheriff, she was subjected to *twelve incidents* of sexual harassment. Other than Plaintiff's self-serving allegations, there is no evidence that any of these incidents occurred. But even so,

1

the alleged conduct is neither sufficiently severe nor pervasive to create a hostile work environment.  Plaintiff's claim should be dismissed.

The same is true regarding Plaintiff's retaliation claim.  Plaintiff did not engage in protected activity, and even if she did, it was unknown to Washington. Further, Plaintiff cannot establish that the restructuring of her position was an adverse action, especially since she received a raise and her job duties remained the same.  Plaintiff also has no evidence of retaliatory animus.  Even if Plaintiff could establish a *prima facie* case of retaliation, which she cannot, her claims still fail because Washington articulated a legitimate, non-discriminatory and non-retaliatory reasons for her unappointment – her conduct following the restructuring meeting.  Plaintiff's claim should be dismissed.

Finally, Plaintiff's claims for civil assault and battery lack merit, because there is no evidence that Washington possessed the requisite intent to commit such torts. Instead, Plaintiff's own voluntary actions, such as using Washington's private kitchen to get water or driving with him to events, completely discount her allegations that Washington's actions were harmful, offensive, and/or were intended to or created fear in her.  Further, any of these alleged actions that occurred before February 11, 2023, are barred by the applicable statute of limitations and should be dismissed.  Plaintiff's assault and battery claims fail.  All of Plaintiff's claims against Washington should be dismissed.

## STATEMENT OF MATERIAL FACTS[1]

### The Parties

#### A.    Raphael "Ray" Washington

Raphael "Ray" Washington was appointed as Wayne County Sheriff on January 15, 2021, after the passing of former Wayne County Sheriff Benny Napoleon.  [SW 41].[2]  Washington successfully retained his seat as Wayne County Sheriff in 2022 for a partial term ending December 31, 2024.  Sheriff Washington was re-elected in 2024 and remains the Wayne County Sheriff to date.  [SW 41].

#### B.    Regina Parks

In 2019, Plaintiff was hired by then-Wayne County Sheriff Benny Napoleon into a compliance disciplinary officer role with the Wayne County Sheriff's Office (the "Sheriff's Office").  [Pl.15-16].  Several months after her hire, Plaintiff was appointed by Sheriff Napolean to the position of Director of Community Outreach.  [Ex. 5].  In this role, Plaintiff served as the "liaison between the sheriff's office and the community at large," for all of Wayne County.  [Pl. 17].  Specifically, Plaintiff would represent the Sheriff's Office at community events, would coordinate events

---

[1] To the extent not specifically stated or cited herein, Washington relies on and incorporates by reference the facts set forth in Wayne County's Motion for Summary Judgment.

[2] Deposition transcripts are generally cited to by the deponents' initials, rather than number.  Exs. 1-4 including the depositions of Plaintiff ("Pl."), Sheriff Washington ("SW"), Rashaun Whitehead ("RW"), and Michael Turner ("MT").

on behalf of the Sheriff's Office, facilitate partnerships, and work with the Wayne County chaplains and Youth and Senior Board. [Pl. 17].

Plaintiff continued in this role after the death of Sheriff Napolean and appointment of Washington as Wayne County Sheriff. As Director of Community Outreach under Washington, Plaintiff did not work closely with Washington. [SW 249]. At that time, Plaintiff was the only individual responsible for community outreach for the Sheriff's Office – for the entire County.[3] [SW 186].

Throughout Plaintiff's entire employment as Director of Community Outreach, Plaintiff reported directly to Wayne County Sheriff's Office Chief of Staff, Michael Turner. [Pl. 17-18].

## Restructuring of the Sheriff's Office Executive Division

Following his re-election in 2024, Washington began restructuring the Executive Division of the Sheriff's Office. [SW 185]. This restructuring included hiring a new Director of Communications and modifying recruiting efforts by hiring

---

[3] Wayne County is the largest county in Michigan, spanning 611.84 square miles with a population of nearly 1.8 million. United States Census Bureau, QuickFacts, Wayne County, Michigan, https://www.census.gov/quickfacts/fact/table/waynecountymichigan/HSG860223 (last accessed January 7, 2026). Census data is appropriate for judicial notice. *See Pierce v. New York Cent. R. Co*., 304 F.Supp. 44 (1969) (Federal district court could take judicial notice of publications of Bureau of Labor Statistics of United States Department of Labor).

4

approximately nineteen (19) investigative recruiters to the Recruitment team.  [SW 184-186].

The restructuring included expanding community outreach by creating a Community Liaison Team.  This was due to Washington's belief that Wayne County was too large for one person to oversee all its community outreach.  [MT 74-75; RW 126].  The Community Liaison Team consisted of four individuals devoted to community outreach, each of whom would be responsible for a quarter of Wayne County.  [SW 186-187].  In addition to Plaintiff, the Community Liaison Team consisted of Erica Hill, who was previously an executive assistant, and two new hires.

On November 13, 2024, Washington held a meeting with Plaintiff, Hill, and one of the new hires to announce his decision and plan to restructure his community outreach efforts, including the creation of the Community Liaison Team.  [SW 198-199].  Turner and the new Director of Communications were also present.  [Id.].

To encourage collaboration and strengthen team communication, Washington arranged for the Team to work in close proximity within a shared designated cubicle area.  [SW 200].  This new collaborative work arrangement included Plaintiff transitioning from a private office to the shared cubicle space, with the new Director of Communications taking over Plaintiff's former office.  [SW 200].  Like Plaintiff, Hill was also required to relocate from her physical office to a cubicle.  [Pl. 143].

This was no surprise to Plaintiff, as Turner previously told Plaintiff about the move before the meeting began.  [Pl. 85-86].

Plaintiff's job duties remained unaffected by the restructuring.  [SW 200].  In fact, Plaintiff received a $2,362.30 raise in connection with the restructuring, equating to an annual salary of $97,243.00.  [Ex. 6].  Plaintiff's re-appointment to the Team was set to begin on November 18, 2024.  [Ex. 7].

**After Being Informed About the Restructuring, Plaintiff Admittedly Engages in Hostile and Offensive Conduct in the Sheriff's Executive Suite**

Immediately following the restructuring meeting on November 13, Plaintiff went to her office and began removing her items.  [Pl. 234].  Around 4:00 p.m. that day, Plaintiff entered the Executive Suite to talk with Turner.  [Pl. 239].  The Executive Suite consists of offices for, among others, Washington and Turner, and the desks of their executive assistants.  [Pl. 239-240].

Plaintiff admits that when she entered the Executive Suite, she was "agitated and irritated."  [Pl. 243].  She stated in front of others in the Executive Suite that "I don't give a fuck," "I am fine. I don't care about this place."  [Pl. 243].  Plaintiff became increasingly loud, stating "I don't need this shit," and was walking back and forth throughout the Executive Suite.  [Pl. 245-246].

Washington's Executive Assistant, Rashaun Whitehead, who was present in the Executive Suite and witnessed Plaintiff's conduct that day, testified that Plaintiff's erratic and unprofessional behavior included her patting her vagina

saying, "I got this, this is what I got."   [RW 132-133].   During the incident, Whitehead pleaded with Plaintiff to sit down and cool off, but Plaintiff continued to pace throughout the Executive Suite and act inappropriately.  [Pl. 247].

Throughout this ordeal, Plaintiff continually insisted on waiting to talk to Turner about her opposition to the restructuring of the Community Liaison Department.  After approximately ten to fifteen minutes of creating a scene in the Executive Suite and Turner not appearing to talk to her, Plaintiff left the Executive Suite and went home.  [Pl. 150, 154, 249].

After Washington learned of Plaintiff's conduct in the Executive Suite, he contacted Turner and asked him to speak with Plaintiff.  Washington also expressed his intent to terminate Plaintiff because of her outburst.  [RW 208-209].  Turner then called Plaintiff and asked her to apologize to the Sheriff or to Ms. Whitehead for her outburst, "otherwise [he] can't be responsible for what the consequences may be." [MT 96-97, 108].  Plaintiff refused to apologize.  [MT 98; Pl. 156-157].

**Plaintiff's Termination**

The next morning following her admitted outburst, Plaintiff called Turner to inquire if she was being terminated.  [Pl. 157].  Plaintiff did not go into the office, and instead called Turner again that afternoon stating, "I guess I'm terminated." Turner responded "Yeah, I was supposed to bring you in the office."  [Pl. 159-160].

Later that day, Plaintiff was informed that her employment was being terminated. Specifically, Plaintiff was terminated as a result of engaging in conduct "that interferes with operations, brings discredit on Wayne County, or is offensive to fellow employees or citizens will not be tolerated." [Ex. 8]. It is undisputed that Washington's decision to unappoint Plaintiff was based on such conduct and policy violation; specifically, Plaintiff walking around the Executive Suite "patting her vagina [and] talking in a loud voice." [SW 216, 218].

**Plaintiff's Hindsight Allegations of Sexual Harassment**

In the evening of November 13, 2024, after the restructuring meeting, Plaintiff claims that she told Whitehead that she "had a recording of the sheriff," and that Whitehead told Washington that night. [Pl. 93-94]. Plaintiff admits that she did not hear Whitehead talk to Washington on the evening of November 13, 2024. [Pl. 93-94]. Whitehead recalls Plaintiff stating, "I got him by the balls, I have a recording." [RW 68]. Whitehead did speak to Washington that night but only asked if Plaintiff had a recording of him hitting on her, to which Washington responded "no." [RW 68-69]. Whitehead did not affirmatively state that Plaintiff had a recording, nor did Whitehead learn of its existence until her deposition in this action. [RW 69].

During her termination meeting on November 15, 2024, Plaintiff met with Venita Terry, who serves as human resources for the Sheriff's Office. [Pl. 49, 162]. During that meeting, Plaintiff spoke with Ms. Terry about her unappointment and

collected her personal belongings.  At no time during the termination meeting did Plaintiff express or share any alleged concerns of sexual harassment or retaliation. [Pl. 162].

Three months later, Plaintiff filed this lawsuit claiming – for the first time – that the Sheriff sexually harassed her, created a hostile work environment, and retaliated against her.  In her Complaint and during her deposition Plaintiff outlines various alleged incidents to support her claim.  She admits many of the alleged acts/statements occurred sometime in 2022.  As set forth below, to the extent they occurred prior to February 2022, those allegations should not be considered.  The remaining allegations occurred over a year before her termination and other than her self-serving testimony, there is no evidence that any of these incidents occurred:

- On May 13, 2022, Plaintiff claims that Washington made reference to not being able to penetrate [ ] his son's mother because she had a lot of scar tissue, and . . . he didn't think that his penis could get through the [ ] scar tissue." [Pl. at 114].  Plaintiff claims she reported this to Mike Turner months later.  [Pl. 116].  Turner denies this. [Ex. 9; MT 117]

- On May 22, 2022, Plaintiff claims that Washington put his hand up the slit of her long black dress, in a room full of people at a Detroit Public Schools event, while standing between his wife and Ms. Whitehead. [Pl. 29-30].  Plaintiff claims she reported this to Mike Turner months later.  [Pl. 37].  Turner denies this. [Ex. 9; MT 117]

- In 2023, Plaintiff claims that Washington commented, "'You wearing that suit, I didn't know you had all that back there'" and she was "so thin."  [Pl. at 118].  There are no witnesses to this alleged statement. [Pl. 118-119].  Plaintiff admits she did not report this incident to anyone at the County.  [Pl. 121]

- On February 21 and 22, 2023, Plaintiff claims that Washington called her cell phone and said he wanted to fuck her. [Pl. 132-133]. Plaintiff further claims that Washington repeatedly called and texted her, saying that although he sent all other employees home due to inclement weather, he wanted Plaintiff to come to the office. [Pl. at 133]. AT&T's records directly contradict this testimony. [Ex. 10, AT&T Records; Pl. 166–167; SW 12–17, 14–22; RW 16].

- Plaintiff claims that in February 27, 2023, Washington hugged and kissed her and rubbed her thigh. [Pl. 25-26]. Plaintiff claims she confronted him about having said he wanted to fuck her, to which he allegedly replied, "All I want is just simple: all I want from you is a kiss from time to time." [Pl. at 138]. There are no witnesses to this incident. [Pl. 25]. Plaintiff claims that she recorded this incident. However, the recording produced in discovery is inaudible. Plaintiff admits that she never told Washington that she recorded him, or that there was a recording. [Pl. 93-94]. In fact, Plaintiff did not tell anyone about the recording until her termination nearly two years later. [Pl. 93-94].

- In February or March 2023, Plaintiff claims that Washington touched her stomach and asked to "feel the baby". [Pl. 77]. There are no witnesses to this incident. [Pl. 77].

- Sometime in 2023, Plaintiff chose to use the private kitchen in Washington's office to get some water and then claims that Washington touched her buttock. [Pl. 59]. Plaintiff admits she did not report this incident to anyone at the County. [Pl. at 60].

- On October 3, 2023, Plaintiff claims that Washington hit her on her buttock while in a crowded elevator at Emagine Theater. [Pl. 62-63]. Plaintiff claims that Washington showed her a video of a woman performing oral sex, and saying something to the effect of "you got to share the love." [Pl. 62-64]. Plaintiff claims she reported this to Mike Turner. [Pl. 67]. Turner denies this. [Ex. 9; MT 117].

- On October 31, 2023, Plaintiff chose to drive with Washington to the centenarian birthday party. [Pl. 61]. Plaintiff claims that Washington touched her buttock while he opened the car door for her. [Pl. 62].

There are no witnesses to this incident.  [Pl. 61-62].  Plaintiff admits she did not report this incident to anyone at the County.  [Pl. at 62].

**<u>Plaintiff Never Filed Complaint of Any Harassment</u>**

Wayne County has in place a policy Preventing Harassment and Discrimination, which includes a mechanism for reporting harassment:

> If you believe you have been subjected to sexual or other harassment, you may report your concerns or file a complaint with a supervisor in your Department, your Department Head, or the Director of Personnel/Human Resources.
>
> Nothing in this statement of policy prevents an employee from directly contacting the Equal Employment Opportunity Commission or the Michigan Department of Civil Rights in addition to or instead of pursuing the matter internally.

[Ex. 8]. Despite the multiple avenues in which Plaintiff could have reported the alleged harassment, Plaintiff did not file any such complaint.  Nor did she contact the EEOC or MDCR.  Rather, Plaintiff claims she had general conversations with Turner – who she was having a consensual sexual relationship with during this time – about *certain* instances, and admits that she told *no one* of others as set forth above. Plaintiff provides no details of these vague conversations.  Turner affirmatively denies that "Plaintiff never raised any concern or complaint to me regarding sexual harassment from Sheriff Washington towards her."  [Ex. 9; MT 117].

Likewise, it is undisputed that Washington was never aware of any concern or complaint from Plaintiff regarding his conduct or any sexual harassment:

Q      Did [Turner] tell you that Regina Parks came to him
       and complained about you and your conduct toward
       her and your sexual harassment?

A      He's never come to me and said that.

[SW 94]

* * *

A.     …And you keep asking me about, did I say this or
       did I say that. I said none of that. And you just said
       something about since 2021. And that's troubling to
       me as well. Because since 2021, and this is 2025,
       [Plaintiff] has never ever said she had a complaint
       against me or that I was harassing her. Never.

[SW 264-265]

## LEGAL ARGUMENT

## I.   PLAINTIFF CANNOT ESTABLISH A PRIMA FACIE CASE OF RETALIATION

To establish a *prima facie* case of retaliation under ELCRA, Plaintiff must show:

(1) she engaged in protected activity; (2) known by Washington; (3) Washington took

adverse employment action against her; and (4) there was a causal connection between

the protected conduct and the adverse employment action. *Meyer v. Center Line*, 242

Mich. App. 560, 568–569 (2000).  Plaintiff must show her participation in protected

activity was a "significant factor" in the decision to unappoint her, not just that there

was a causal link between the two.  *Id.*  Plaintiff's retaliation claim appears to be

premised solely on the restructuring of her position and her unappointment.  *See* ECF

No. 1, Page ID. 17, ¶ 99.

**A. Plaintiff Did Not Engage in Protected Activity**

An employee engages in protected activity when she has opposed a violation of ELCRA or because she has made a charge, filed a complaint, testified, assisted, or participated in an investigation, proceeding, or hearing under ELCRA.  MCL 37.2701(a).  *Mitan v. Neiman Marcus*, 240 Mich. App. 679, 682 (2000).  That did not occur here.

Plaintiff admits that at no time during her employment did she report any of her concerns about Washington to human resources.  [Pl. 54, 72].  Plaintiff has provided no evidence that she made a charge, filed a complaint, or was involved in an investigation, proceeding, or hearing under ELCRA.  The only potential protected activity Plaintiff could have engaged in consists of (1) alleged vague conversations with Turner about certain of the incidents that occurred, and (2) a conversation with Ms. Whitehead that she had a recording of the Sheriff hitting on her.  However, these generalized concerns are not actionable.  *Barrett v. Kirkland Community College*, 245 Mich. App. 306, 319 (2001) (citing *McLemore v. Detroit Receiving Hosp. & Univ. Medical Center*, 196 Mich. App. 391, 396 (1992).  (Employee's charge must clearly convey to an objective employer that the employee is raising the specter of a claim of unlawful discrimination pursuant to ELCRA).

Even if this Court assumes as true that Plaintiff made a complaint protected under ELCRA to Turner, which she did not, the evidence that such conversations

occurred consists wholly of Plaintiff's self-serving statements.  Courts have often held that a plaintiff's testimony, standing alone or sometimes even with weak support, is insufficient to survive summary judgment.  *See, e.g.*, *Kinnard v. Rutherford Cnty. Bd. of Educ.*, 109 F. App'x 85, 93 (6th Cir. 2004) (affirming summary judgment to employer on a Title VII retaliation claim because a plaintiff "cannot show pretext by simply asserting his personal belief"); *Chandler v. Regions Bank*, 573 F. App'x 525, 530 (6th Cir. 2014) (affirming summary judgment to employer on a Title VII retaliation claim where plaintiff's only evidence of differential treatment was "his own assertion"); *Bell v. Ohio State University,* 35 F.3d 240, 252-253 (2003) (affirming summary judgment to university on a § 1981 claim despite plaintiff's deposition testimony that that she had a relevant comparator); *Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139–41 (6th Cir. 1993) (affirming summary judgment to employer on an ERISA claim despite plaintiff's affidavit and supportive deposition testimony from another witness where the employer countered with a letter from its benefits committee and conflicting deposition testimony).

Here, the only purported "evidence" of protected activity is the self-serving and after-the-fact conduct that courts have found to be insufficient.

**B. Any "Protected Activity" was Unknown to Washington.**

14

Even if Plaintiff could prove that her general conversations with Turner and Whitehead were protected activity, which she cannot, those conversations were unknown to Washington.  Indeed, there is not a shred of evidence in the record establishing that Washington had any such knowledge.

Plaintiff admits that she did not discuss her concerns with Washington, and Washington did not learn of any such concerns from anyone else.  [SW 94, 264-265].  The evidence further supports that Washington did not learn that Plaintiff may have a recording of him on the night of November 13, 2024. [SW 93-94; WH 68-69].  Plaintiff's testimony that Whitehead must have told Washington is pure speculation.

There is simply no evidence in the record establishing that Washington had knowledge of any complaints purportedly made by Plaintiff.  Having no knowledge of any such protected activity, Washington cannot have retaliated against Plaintiff for engaging in such action.  Her retaliation claim fails as a matter of law.

## C. The Restructuring of the Community Outreach Team Is Not an Adverse Action

While Plaintiff labels the restructuring of the Executive Division as a demotion, "[P]laintiff's subjective impressions are not controlling." *Chen v. Wayne State Univ*, 284 Mich. App. 172, 201 (2009).  It is undisputed that Plaintiff received a raise and her job duties remained unaffected by the restructuring.  This was not an adverse action because it did not materially alter the terms and conditions of her

employment. *See, e.g., Aplin v. Faurecia Interior Sys, Inc*, 2020 WL 7017385, at *6 (E.D. Mich. July 30, 2020), report and recommendation adopted, 2020 WL 6268448 (E.D. Mich. Oct 26, 2020) (alteration in job duties and change in workstation does not support adverse action).

### D. Plaintiff Cannot Show a Causal Connection

There is no evidence of a causal connection or retaliatory animus. There is no evidence that Washington's restructuring efforts – which affected more than just Plaintiff – were motivated by any protected activity. Likewise, there is no evidence that Plaintiff's unappointment was influenced by any protected activity. Washington's decision to unappoint Plaintiff was based solely on her turbulent behavior exhibited on November 13, 2024, after the restructuring meeting.

## II. Plaintiff Cannot Establish Pretext

Even if Plaintiff could establish a *prima facie* case of retaliation, her claims still fail, as Washington has articulated legitimate, non-discriminatory and non-retaliatory reasons for her unappointment (*i.e.*, Plaintiff's conduct following the restructuring meeting). Accordingly, the burden shifts back to Plaintiff to show Washington's stated reasons were a mere pretext for retaliation. Plaintiff can establish pretext (1) by showing the reasons had no basis in fact, (2) if they have a basis in fact, by showing that they did not actually motivate the decision, or (3) if they were factors, by showing that they were jointly insufficient to justify the decision. *Major v. Village of Newberry*,

316 Mich. App. 527, 542 (2016).   An honest belief, even if ultimately found to be objectively incorrect or improvident, precludes a finding of pretext.  *Town v. Mich. Bell Telephone Co*, 455 Mich. 688, 703-704 (1997)).   In other words, "a triable question of falsity does not necessarily mean that there is a triable question of discrimination," as Plaintiff must also raise a triable question of retaliatory motive.  *Id.* at 706.   Plaintiff cannot establish pretext.  *See MacEachern v. Quicken Loans, Inc*, No 17-1005, 2017 WL 5466656, at *3 (CA6 Oct 17, 2017) (affirming summary judgment of gender discrimination claim because even if plaintiff could establish prima facie case of gender discrimination, his dissemination of confidential information is a legitimate non-discriminatory reason for termination).

Plaintiff cannot show that Washington's reason for unappointing her was not based in fact.  Plaintiff *admits* that as she entered the Executive Suite she was "agitated and irritated."  [SW 243].  She also *admits* that she began cursing, walking about the Executive Suite, and was told to sit down and cool off.   [Pl. 243, 245-247]. Washington *admits* that this offensive conduct – as well as Plaintiff patting her vagina and talking loudly around the Executive Suite – was the reason for her unappointment.  [SW 216, 218].  *See Upshaw v. Ford Motor Co.*, 576 F.3d 576, 586 (6th Cir. 2009) ("If the employer had an honest belief in the proffered basis for the adverse employment action, and that belief arose from reasonable reliance on the particularized facts before the employer when it made the decision, the asserted

reason will not be deemed pretextual even if it was erroneous."); *Majewski v. Automatic Data Processing, Inc.*, 274 F.3d 1106, 1117 (6th Cir. 2001) ("An employer has an honest belief in its reason for discharging an employee where the employer reasonably relied on the particularized facts that were before it at the time the decision was made.").  Washington reasonably determined that termination was warranted because on the information he received, and therefore, his decision was not pretext for retaliation.

Plaintiff's attempt to undercut her behavior in the Executive Suite does not establish pretext. *Blizzard v. Marion Tech. Coll.*, 698 F.3d 275, 286 (6th Cir. 2012) ("To overcome the honest belief rule, the employee "must allege more than a dispute over the facts upon which the discharge was based.  She must put forth evidence which demonstrates that the employer did not honestly believe in the proffered reason for its adverse employment action.").  Plaintiff has no evidence that anything other than her own misconduct motivated her unappointment.  Plaintiff cannot establish pretext for unlawful retaliation, and therefore, Plaintiff's retaliation claim fails.

## III.  PLAINTIFF CANNOT ESTABLISH A HOSTILE WORK ENVIRONMENT HARASSMENT CLAIM

Under Michigan law, a hostile work environment claim exists only where the alleged sexual harassment substantially interferes with an individual's employment. *Radtke v. Everett*, 442 Mich. 368, 381, 501 N.W.2d 155, 161 (1993).  To establish a

hostile work environment harassment claim, Plaintiff must prove: (1) she belonged to a protected group; (2) she was subjected to communication or conduct on the basis of sex; (3) she was subjected to unwelcome sexual conduct or communication; (4) the unwelcome sexual conduct or communication was intended to or in fact did substantially interfere with her employment or created an intimidating, hostile, or offensive work environment; and (5) that the defendant knew or should have known about the harassment and failed to act.  *Chambers v. Trettco, Inc*, 463 Mich. 297, 310 (2000).  Additionally, under the ELCRA, the conduct alleged must be "sexual in nature."  *Haynie v. Michigan*, 468 Mich. 302, 312–13 (2003).

### A. To The Extent Plaintiff is Relying On Alleged Incidents Which Occurred Prior to February 2022, Those Claims Are Time Barred.

Plaintiff testified regarding alleged incidents that indisputably occurred outside the applicable statute of limitations.  Because the incidents are time-barred, they cannot serve as a basis for liability and are legally irrelevant to the claims at issue.  *Bell v. CSX Transp., Inc.*, 172 F. Supp. 2d 933, 937 (ED Mich 2001).  Moreover, any claims prior to February 2022 are isolated, remote in time, and unrelated to any timely alleged conduct.  *Id.; Garg v. Macomb County Community Mental Health Services*, 472 Mich. 263 (2005).  Consideration of these allegations would therefore be improper at the summary judgment stage.  *Id*.

Permitting Plaintiff to rely on any untimely allegations occurring before February 2022 would effectively circumvent the statute of limitations and

improperly revive a time-barred claim, contrary to settled Sixth Circuit law.

**B. Plaintiff Cannot Establish A Severe or Pervasive Work Environment.**

To sustain a claim of sexual harassment, a plaintiff must offer proof that "the work environment is so tainted by harassment that a reasonable person would have understood that the defendant's conduct or communication had either the purpose or effect of substantially interfering with the plaintiff's employment, or subjecting the plaintiff to an intimidating, hostile, or offensive work environment." *Radtke v. Everett*, 442 Mich. at 398. This is an objective test based on all the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Quinto v. Cross & Peters Co*, 451 Mich. 358, 370 n 9 (1996). Courts have generally declined to find that "isolated instances rather than an ongoing situation" constitute sufficiently pervasive or severe conduct. *Clark v. United Parcel Serv, Inc*, 400 F.3d 341, 352 (CA 6, 2005); *Radtke*, 442 Mich. at 372 ("a single incident of sexual harassment is generally insufficient").

Here, Plaintiff cannot meet the severe or pervasive standard. During her nearly four years of employment while Washington was Sheriff, Plaintiff claims twelve incidents of isolated comments, instances where she was touched, and one hug and kiss. This was not severe behavior. Nor was it pervasive. At the time

Plaintiff was unappointed, all of this alleged behavior had stopped *more than one year* earlier.

Courts have rejected hostile work environment claims involving far more egregious and frequent conduct. *See e.g.*, *In Burnett v. Tyco Corp*, 203 F.3d 980, 983 (6th Cir. 2000) [4] (no hostile work environment where manager's actions over a six-month period, which included putting pack of cigarettes under the plaintiff's shirt and bra strap, making a comment about the plaintiff's "cherry" and saying "dick the malls, dick the malls, I almost got aroused."); *Clark v. United Parcel Service, Inc*, 400 F.3d 341, (6th Cir. 2005) (three incidents over 2 ½ years, including vulgar jokes, supervisor placing a vibrating pager on female employee's thigh and pulling at her overalls after she told him she was wearing a thong were not sufficiently pervasive or hostile); *Shaull v. Mich. Affiliated Health Care Sys.*, 1998 WL 1989810 (Mich. Ct. App. Sept 22, 1998) (holding that hugging plaintiff from behind, kissing the back of plaintiff's head and calling her "hon," telling the plaintiff to cross her legs "like a man" while wearing a skirt, and asking personal questions about plaintiff's sexual relationship with her husband, was not severe or pervasive enough conduct to constitute sexual harassment based on a hostile work environment). *Clay v. UPS, Inc.*, 501 F.3d 695, 707 (6th Cir. 2007) (affirming summary judgment where "fifteen

---

[4] Michigan courts consider federal case law interpreting Title VII to be persuasive authority on issues brought under the ELCRA. *Pena v. Ingham County Road Comm'n*, 255 Mich. App. 299, 311 n 3 (2003).

specific incidents spanning a two-year period were isolated and were not pervasive"); *Bowman v. Shawnee State Univ.*, 220 F.3d 456, 458–59, 464 (6th Cir. 2000) (concluding that five instances of harassing conduct, including a supervisor's grabbing the plaintiff's buttocks and saying that "she controlled [the plaintiff's] ass and she would do whatever she wanted with it," did not constitute severe or pervasive harassment); *Nathan v. Great Lakes Water Auth.*, 992 F.3d 557, 568 (6th Cir. 2021) ("[Plaintiff] has evidence of only five instances of sex-based harassment over a roughly fifteen-month period of time.  This court has found comparable patterns of harassment insufficient to survive summary judgment in the past.").

Further, Plaintiff presents no evidence that the alleged harassment prevented, impeded, or impaired her from doing her job.  Plaintiff continued to work despite the alleged harassment, while allegedly discussing it only with Turner.  The last incident of alleged harassment occurred on October 31, 2023, more than one year before Plaintiff was unappointed.  The evidence does not rise to the level of a hostile work environment as a matter of law.

## IV.    PLAINTIFF CANNOT ESTABLISH A CLAIM FOR ASSAULT AND BATTERY

In order to establish claims for civil assault and battery under Michigan law, Plaintiff must prove that Washington possessed the requisite intent to commit those torts.  *Mitchell v. Daly*, 133 Mich. App. 414, 426–427 (1984); *Espinoza v. Thomas*, 189 Mich. App. 110, 119 (1991).  The U.S. Supreme Court has long recognized that

22

"[i]ntentional torts generally require that the actor intend 'the consequences of an act,' not simply 'the act itself.'" *Kawaauhau v. Geiger*, 523 U.S. 57, 61–62 (1998). Plaintiff's claims for assault and battery fail.

"An assault is defined as any intentional unlawful offer of corporal injury to another person by force, or force unlawfully directed toward the person of another, under circumstances which create a well-founded apprehension of imminent contact, coupled with the apparent present ability to accomplish the contact." *Espinoza v. Thomas*, 189 Mich. App. at 119. The intent required to establish a claim for assault is the intent to commit a battery or an intent to create in the victim a reasonable fear or apprehension of an immediate battery. *Mitchell v. Daly,* 133 Mich. App. at 426. There is no evidence that Washington intended to create a reasonable fear of an immediate battery.

A battery is defined as "the willful and harmful or offensive touching of another person which results from an act intended to cause such a contact"—the consummation of an assault. *Id*. The intent necessary to establish a claim for battery is the intent to cause a harmful or offensive contact with another person, or knowing, with substantial certainty, that such contact would result. *Boumelhem v. BIC Corp*, 211 Mich. App. 175, 184 (1995). Even if Washington did touch Plaintiff, which he did not, Plaintiff has not established that such touching was intended to be harmful.

23

As it applies to both assault and battery, the standard is not what the subjective beliefs of the particular plaintiff were – an objective standard controls.   While Plaintiff claims that such touching occurred and was offensive to Plaintiff, this alleged conduct – if true – does not equate to the type of violence contemplated by these claims.   Further, Plaintiff's own ongoing choices to remain in close proximity to Washington, when there was no reason to be (*i.e.* using his private kitchen to get water and driving with him to events), completely discounts her allegations that Washington's actions were harmful, offensive, and/or were intended to or created fear in her.   Plaintiff's assault and battery claims fail and should be dismissed.

Further, Plaintiff filed this action on February 11, 2025.   [ECF No.1].   In Michigan, civil assault and battery claims are subject to a two-year statute of limitations.   *See* MCL 600.5805(2) (claims for assault and battery are governed by two-year limitations period).   To the extent Plaintiff claims that any of these alleged assaults or batteries occurred before February 11, 2023, they are barred by the applicable statute of limitations and should be dismissed.

## **CONCLUSION**

For the reasons detailed above, Defendant Raphael "Ray" Washington respectfully requests that this Court grant his Motion for Summary Judgment, dismiss Plaintiff's Complaint with prejudice, and award Washington his costs, attorneys' fees, and any other relief this Court deems equitable.

Respectfully submitted,

*s/Maria F. Dwyer*
Maria F. Dwyer (P60946)
Brian D. Shekell (P75327)
Nina M. Jankowski (P80558)
CLARK HILL PLC
500 Woodward Avenue, Suite 3500
Detroit, Michigan 48226
(313) 965-8300
mdwyer@clarkhill.com
bshekell@clarkhill.com
njankowski@clarkhill.com

Date:  January 14, 2026          *Attorneys for Defendant Washington*

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing document was served upon all parties and/or attorneys of record to the above cause herein at their respective email addresses as disclosed on the pleadings on January 14, 2026 via:

| | | |
|---|---|---|
| _____ U.S. Mail | _____ Facsimile | |
| __X__ E- Filing | _____ Hand Delivery | |
| _____ E-Mail | _____ Federal Express | |

*s/Theresa L. Berge*