## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

**REGINA PARKS,**
  *an individual,*

  Plaintiff,                                Case No: 2:25-cv-10409

vs.                                         Hon. Judge Shalina D. Kumar

**WAYNE COUNTY,** *a political*
*subdivision of the State of Michigan,*
**RAPHAEL "RAY" WASHINGTON,** *in*
*his individual and official capacities,*
*Jointly and severally*
  Defendants.

| | |
|---|---|
| **DEBORAH GORDON LAW** | **DICKINSON WRIGHT PLLC** |
| Deborah L. Gordon (P27058) | Aaron V. Burrell (P73708) |
| Elizabeth Marzotto Taylor (P82061) | Angelina R. Delmastro (P81712) |
| Sarah Gordon Thomas (P83935) | Davina A. Bridges (P85597) |
| Morry Daniel Hutton (P81188) | 500 Woodward Avenue, Ste. 4000 |
| 33 Bloomfield Hills Parkway, Suite 220 | Detroit, MI 48226 |
| Bloomfield Hills, Michigan 48304 | (313) 223-3500 |
| (248) 258-2500 | (844) 670-6009 (fax) |
| dgordon@deborahgordonlaw.com | aburrell@dickinsonwright.com |
| emarzottotaylor@deborahgordonlaw.com | adelmastro@dickinsonwright.com |
| sthomas@deborahgordonlaw.com | dbridges@dickinsonwright.com |
| mhutton@deborahgordonlaw.com | **Attorneys for Defendant Wayne** |
| **Attorneys for Plaintiff** | **County** |
| | |
| | **CLARK HILL PLC** |
| | Maria F. Dwyer (P60946) |
| | Brian D. Shekell (P75327) |
| | 500 Woodward Avenue, Ste. 3500 |
| | Detroit, MI 48826 (313) 309-9474 |
| | mdwyer@clarkhill.com |
| | bshekell@clarkhill.com |
| | **Attorneys for Defendant Raphael** |
| | **Washington** |

## DEFENDANT WAYNE COUNTY'S MOTION FOR SUMMARY JUDGMENT

Defendant Wayne County ("the County"), by and through its attorneys, Dickinson Wright PLLC, moves for Summary Judgment of Plaintiff Regina Parks's ("Plaintiff") claims pursuant to Federal Rule of Civil Procedure 56.

Plaintiff cannot establish a genuine dispute of material fact as to her claims against the County, and, as such, the County is entitled to Summary Judgment in its favor. In support of its Motion, the County relies upon the attached Brief in Support of Defendant Wayne County's Motion for Summary Judgment and upon the pleadings on file with this Court.

Pursuant to Local Rule 7.1(a), the County sought concurrence from Plaintiff on January 14, 2026; Plaintiff did not concur.

WHEREFORE, the County respectfully requests that the Court grant its Motion for Summary Judgment in its entirety and enter judgment in its favor.

Respectfully submitted,
 _/s/ Aaron V. Burrell_
Aaron V. Burrell (P73708)
Angelina R. Delmastro (P81712)
Davina A. Bridges (P85597)
DICKINSON WRIGHT PLLC
500 Woodward Ave., Suite 4000
Detroit, MI  48226
(313) 223-3126
aburrell@dickinsonwright.com
adelmastro@dickinsonwright.com
dbridges@dickinsonwright.com
*Attorneys for Wayne County*

Dated: January 14, 2026

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

**REGINA PARKS,**
  *an individual,*

                    Plaintiff,                    Case No: 2:25-cv-10409

vs.                                               Hon. Judge Shalina D. Kumar

**WAYNE COUNTY,** *a political*
*subdivision of the State of Michigan,*
**RAPHAEL "RAY" WASHINGTON,** *in*
*his individual and official capacities,*
*Jointly and severally*
                    Defendants.

| | |
|---|---|
| **DEBORAH GORDON LAW** | **DICKINSON WRIGHT PLLC** |
| Deborah L. Gordon (P27058) | Aaron V. Burrell (P73708) |
| Elizabeth Marzotto Taylor (P82061) | Angelina R. Delmastro (P81712) |
| Sarah Gordon Thomas (P83935) | Davina A. Bridges (P85597) |
| Morry Daniel Hutton (P81188) | 500 Woodward Avenue, Ste. 4000 |
| 33 Bloomfield Hills Parkway, Suite 220 | Detroit, MI 48226 |
| Bloomfield Hills, Michigan 48304 | (313) 223-3500 |
| (248) 258-2500 | (844) 670-6009 (fax) |
| dgordon@deborahgordonlaw.com | aburrell@dickinsonwright.com |
| emarzottotaylor@deborahgordonlaw.com | adelmastro@dickinsonwright.com |
| sthomas@deborahgordonlaw.com | dbridges@dickinsonwright.com |
| mhutton@deborahgordonlaw.com | **Attorneys for Defendant Wayne** |
| **Attorneys for Plaintiff** | **County** |
| | |
| | **CLARK HILL PLC** |
| | Maria F. Dwyer (P60946) |
| | Brian D. Shekell (P75327) |
| | 500 Woodward Avenue, Ste. 3500 |
| | Detroit, MI 48826 (313) 309-9474 |
| | mdwyer@clarkhill.com |
| | bshekell@clarkhill.com |
| | **Attorneys for Defendant Raphael** |
| | **Washington** |

**BRIEF IN SUPPORT OF DEFENDANT WAYNE COUNTY'S MOTION
FOR SUMMARY JUDGMENT**

# **TABLE OF CONTENTS**

I.  Introduction ................................................................................................ 1

II. Statement of Material Facts ...................................................................... 3

    A. Plaintiff's Employment at Wayne County ........................................... 3

    B. The Alleged Harassment ..................................................................... 4

    C. The Sheriff Decides to Restructure Community Outreach in the WCSO.
       6

    D. Plaintiff's Inappropriate Outburst in the Executive Suite .................... 7

III. Standard of Review ...................................................................................... 9

IV. Legal Argument ........................................................................................... 9

    E. Plaintiff's Retaliation Claims Cannot Succeed. .................................... 9

        1. Plaintiff Cannot Establish a Prima Face Case of Retaliation. .... 9

        2. Plaintiff Cannot Show that the County's Reason for Terminating
        her Employment – Her Unprofessional and Unbecoming Outburst in
        the Workplace – Was Pretext for Unlawful Retaliation. .................... 12

    A. Plaintiff's Hostile Work Environment Claims Fail ............................ 14

        3. The Alleged Harassment Does Not Rise to the Level of a HWE
        16

        4. The County is Not Liable for the Alleged HWE under Title VII.
        18

            a) The Alleged Harassment Did Not Culminate in a Tangible
            Employment Action ................................................................. 18

            b) The County Exercised Reasonable Care to Prevent and
            Correct Any Harassing Behavior and Plaintiff Unreasonably
            Failed to Take Advantage of the Preventative or Corrective
            Opportunities the County Provided. .......................................... 19

            c) Plaintiff Unreasonably Failed to Take Advantage of the
            Preventive or Corrective Opportunities that the County Provided
            21

        5. The County is Not Liable Under the ELCRA Because it Did Not
        Have Notice of the Alleged Hostile Work Environment .................... 23

V.  Conclusion .................................................................................................. 25

# TABLE OF AUTHORITIES

**Cases**

*Anwar v. Dow Chem. Co.*, 876 F.3d 841 (6th Cir. 2017) ..........................................9

*Beaver v. Macomb Cnty.*, No. 2:21-CV-10750-TGB-EAS, 2025 WL 975468
　　(E.D. Mich. Mar. 31, 2025) ........................................................................ 15, 23

*Blizzard v. Marion Tech. Coll.*, 698 F.3d 275 (6th Cir. 2012) ...............................14

*Bowman v. Shawnee State Univ.*, 220 F.3d 456 (6th Cir. 2000) ...........................17

*Clark v. UPS, Inc.*, 400 F.3d 341 (6th Cir. 2005)...................................................20

*Clay v. UPS, Inc.*, 501 F.3d 695 (6th Cir. 2007) ....................................................17

*Elezovic v. Ford Motor Co.*, 472 Mich. 408 (2005) ......................................... 24, 25

*Faragher v. City of EBoca Raton*, 524 U.S. 775 (1998) .................................. 20, 21

*Frazier v. USF Holland, Inc.*, 250 F. App'x 142 (6th Cir. 2007)...........................10

*Garg v. Macomb Cnty. Community Mental Health Servs.*, 472 Mich. 263
　　(2005)...............................................................................................................16

*Hall v. Sky Chefs, Inc.*, 784 F. Supp. 2d 811 (E.D. Mich. 2011)..............................9

*Keller v. Clean Harbors, Inc.*, No. CV 17-11807, 2019 WL 5800290 (E.D.
　　Mich. Apr. 30, 2019) ................................................................................. 10, 11

*Kenney v. Aspen Techs., Inc.*, 965 F.3d 443 (6th Cir. 2020) ..................................11

*Majewski v. Automatic Data Processing, Inc.*, 274 F.3d 1106 (6th Cir. 2001).......14

*Marquis v. Tecumseh Prods. Co.*, 206 F.R.D. 132 (E.D. Mich. 2002) ...................24

*Moore v. Philip Morris Cos.*, 8 F.3d 335 (6th Cir. 1993)..........................................9

*Nathan v. Great Lakes Water Auth.*, 992 F.3d 557 (6th Cir. 2021)........................17

*Rouch World, LLC v. Dep't of Civ. Rights*, 510 Mich. 398 (2022) ........................16

*Russell v. Bronson Heating & Cooling*, 345 F. Supp. 2d 761 (E.D. Mich. 2004)
　　10

*Schlosser v. VRHabilis, LLC*, 113 F.4th 674 (6th Cir. 2024) ..................................18

*Sheridan v. Forest Hills Pub. Schs.*, 247 Mich. App. 611 (2001) ................... 15, 23

*Upshaw v. Ford Motor Co.*, 576 F.3d 576 (6th Cir. 2009)......................................13

*Wright v. Cellular Sales Mgmt. Group, LLC*, 793 F. App'x 409 (6th Cir. 2019) 12

*Wyatt v. Nissan N. Am., Inc.*, 999 F.3d 400 (6th Cir. 2021) ........................... passim

**Rules**

Fed R. Civ. P. 56(c)(1)(A) ..........................................................................9

Fed. R. Civ. P. 56(a)..................................................................................9

**<u>ISSUES PRESENTED</u>**

(1)     Should the Court grant Defendant Wayne County's Motion for Summary Judgment where Plaintiff cannot establish a hostile work environment because the alleged harassment was neither severe nor pervasive and did not culminate in a tangible employment action?

**Defendant Wayne County Answers: Yes.**

Plaintiff Answers: No.

**The Court Should Answer: Yes.**


(2)     Should the Court grant Defendant Wayne County's Motion for Summary Judgment where Plaintiff cannot establish her retaliation claims because the decisionmaker, Defendant Sheriff Raphael Washington, had no knowledge of Plaintiff's alleged protected activity, and Plaintiff herself proximately caused her termination by her own misconduct?

**Defendant Wayne County Answers: Yes.**

Plaintiff Answers: No.

**The Court Should Answer: Yes.**

## CONTROLLING OR MOST APPROPRIATE AUTHORITY

Fed. R. Civ. P. 56.

Title VII, 42 U.S.C. § 2000e *et seq.*

MCL 37.2101 *et seq.*

*Faragher v. City of Boca Raton*, 524 U.S. 775, 806 (1998)

## I.   <u>INTRODUCTION</u>

Plaintiff Regina Parks ("Plaintiff") worked for Defendant Wayne County (the "County") in the Sheriff's Office ("WCSO") as its Director[1] of Community Outreach ("DCO") from 2019 until the Sheriff unappointed her on November 14, 2024 due to her unprofessional, unbecoming and vulgar outburst in the workplace.

One day prior, Defendant Sheriff Raphael Washington (the "Sheriff") announced he was restructuring the community outreach function of the WCSO. As restructured, community outreach would be team-based, with four employees working together under the leadership of a director of communications and community outreach. Since three employees would join Plaintiff in community outreach, Plaintiff's "Director" title was removed, and Plaintiff's workspace was relocated from an office to a cubicle with her new team members.

Although Plaintiff had a change in title, she lost no pay or benefits (and, in fact, recently received a raise). Plaintiff was incensed by the restructuring. She stormed into the executive suite and caused a scene, including yelling, swearing, and slapping her vaginal area, saying, "I do not need this shit! I have this!" during her outburst. When the Sheriff learned of Plaintiff's misconduct, he decided Plaintiff's unprofessional, unbecoming behavior warranted immediate separation from

---

[1] The "Director" title was a misnomer. Plaintiff never "directed" anything; she did not supervise or manage any employees, divisions, or departments.

employment with the County.

On February 11, 2025, Plaintiff filed suit against the County and the Sheriff, alleging sexual harassment hostile work environment ("HWE") and retaliation claims against the County under Title VII and the Elliot-Larsen Civil Rights Act ("ELCRA"). According to Plaintiff, the Sheriff began sexually harassing her in 2022. Plaintiff allegedly reported the harassment to her supervisor, WCSO Chief of Staff Michael Turner ("Turner"). Throughout the period of alleged harassment (and Plaintiff's alleged reporting of same), Plaintiff and Turner were involved in a casual sexual relationship.

For the reasons set forth herein, Plaintiff's claims against the County fail as a matter of law, and the County is entitled to summary judgment in its favor. First, the alleged harassment does not rise to the level of a HWE. It was neither sufficiently severe nor pervasive, and it did not in fact prevent, impede, or impair Plaintiff from performing her job. Second, even if the alleged harassment rose to the level of a HWE, which it did not, Plaintiff is unable to prove the County is liable. Plaintiff cannot establish strict liability because the alleged harassment did not result in a tangible employment action. Plaintiff cannot establish County liability otherwise because the County is entitled to the *Faragher-Ellerth* affirmative defense.

Plaintiff's retaliation claims fail because the Sheriff had no knowledge of Plaintiff's alleged protected activity when he made the employment decisions at

issue. Moreover, Plaintiff's own misconduct on her last day of work was an intervening and superseding cause of her unappointment, destroying any causal connection that might otherwise have existed between the alleged protected activity and the unappointment. The Sheriff unappointed Plaintiff because of her inappropriate, unbecoming behavior in the workplace. There is no evidence that reason was pretext for unlawful retaliation.

For these reasons, as set forth in greater detail below, the Court should grant the County's Motion for Summary Judgment in its entirety.

## II.    STATEMENT OF MATERIAL FACTS
### A. Plaintiff's At-Will Employment at Wayne County

Plaintiff began working at the WCSO in 2019 as a compliance disciplinary officer. (**Ex. 1**, Pl. Dep., 15-16.) She became the DCO three months later. (*Id.*) As DCO, Plaintiff liaised between the WCSO and the community, including representing the Sheriff at community events, working with the youth and senior board, facilitating community events, creating proclamations, resolutions, certificates, and letters for citizens, and working with the WCSO chaplains. (Pl. 17.) Although Turner was Plaintiff's direct supervisor during her entire tenure as DCO, she primarily received supervision from Benny Napoleon while Napoleon was the Sheriff. (Pl. 17, 18.) Plaintiff held Napoleon in high regard, and his death affected her deeply. (*Id.*) After Napoleon's death in 2020, Washington was appointed Sheriff in January 2021. (Pl. 20.)

During the summer of 2021, Plaintiff and Turner began an on-again, off-again sexual relationship, in violation of County policy. (Pl. 37; **Ex. 2**, Washington Dep., 92.) These "random encounter[s]" also occurred in 2022 and the summer of 2024. (Pl. 37, 40.) Plaintiff never reported this sexual relationship to anyone at the County. (Pl. 38.) The Sheriff only learned of it after Plaintiff filed this Complaint, when Turner confessed to him in late February or early March of 2025. (Washington 238– 239, 242.)[2]

### B. The Alleged Harassment

Initially, Plaintiff had a "pleasant" relationship with Sheriff Washington. (Pl. 20-21.) Plaintiff testified this changed in 2022 when the Sheriff allegedly first touched Plaintiff inappropriately. (*Id.*) Plaintiff outlined various incidents of alleged harassment during her deposition. To the extent any alleged incidents may have occurred prior to February 2022,[3] those incidents should not be considered. The remaining allegations occurred over a year before her termination and, other than her self-serving testimony, there is no evidence that any of these incidents occurred:

> **May 13, 2022** MACC Gala – Plaintiff testified that "[the Sheriff] made reference to not being able to penetrate [ ] his son's mother because she had a lot of scar tissue, and . . . he didn't think that his penis could get through the [ ] scar tissue." (Pl. 114.) Plaintiff claims she reported this to Turner months later. (Pl. 116.) Turner denies this. (Turner 117.)

---

[2] Upon learning of Turner's inappropriate relationship with Plaintiff, the Sheriff reported it to HR. (*Id.* at 238–240.) Turner separated from the WCSO in May 2025. (*Id.*; **Ex. 3**, Turner Dep., 3, 60-61.)
[3] *See, e.g.*, Pl. 21, 23, 77–78, 119.)

**May 22, 2022** – Plaintiff testified that the Sheriff put his hand up her dress and touched her upper thigh at a gala event. (Pl. 28-29.) Plaintiff claims she reported this to Turner months later. (Pl. 37). Turner denies this. (Turner 117.)

**2023** – Plaintiff testified that the Sheriff commented to her, "'You wearing that suit, I didn't know you had all that back there'" and she was "so thin." (Pl. 118.) There are no witnesses to this alleged statement. (Pl. 118–119.) Plaintiff admits she did not report this incident to anyone at the County. (Pl. 121.)

**February 21 & 22, 2023** – Plaintiff testified that the Sheriff called her cell phone and said he wanted to fuck her. (Pl. 132–133.) Plaintiff further testified that the Sheriff repeatedly called and texted her, saying that although he sent all other employees home due to inclement weather, he wanted Plaintiff to come to the office. (*Id.*)[4]

**February 2023** – Plaintiff testified that the Sheriff hugged her, kissed her lips, and rubbed her thigh. (Pl. 25–26.) Plaintiff testified she confronted him about having said he wanted to fuck her, to which he replied, "All I want is just simple: all I want from you is a kiss from time to time." (Pl. 138.) There are no witnesses to this incident. (Pl. 25.)[5]

**February or March 2023** – Plaintiff testified that the Sheriff grabbed her butt cheek. (Pl. 58–59.) Plaintiff admits she did not report this incident to anyone at the County. (Pl. 60.)

**February or March 2023** – Plaintiff testified that the Sheriff touched her stomach, asking, "'Can you feel the baby?'" (Plaintiff was not pregnant). (Pl. 77.) There are no witnesses to this incident. (*Id.*)

**October 3, 2023** – Plaintiff alleged the Sheriff hit her on her buttocks in an elevator and "showed [her] a video of a woman performing oral

---

[4] AT&T's records directly contradict this testimony. (**Ex. 4**, AT&T Records; Pl. 166–167; Washington 12, 14; **Ex. 5**, Whitehead Dep., 16.)

[5] Plaintiff testified she recorded this conversation on February 27, 2023, allegedly at Turner's direction. (Pl. 95-96.) The recording produced in discovery is inaudible. Plaintiff admits she never told the Sheriff that she recorded him, or that there was a recording. (Pl. 93–94.) In fact, Plaintiff did not tell anyone about the recording until her termination nearly two years later. (*Id.*)

sex on [him]." (Pl. 62-64.) Plaintiff claims she reported this to Turner. (Pl. 67.) Turner denies this. (Turner 117.)

**October 31, 2023** – Plaintiff testified the Sheriff swatted her on her buttocks as she was getting in a vehicle. (Pl. 61.) There are no witnesses to this incident, and Plaintiff admits she did not report it to anyone at the County. (Pl. 61–62.)

According to Plaintiff's sworn testimony, "[the Sheriff] did not touch [her] inappropriately after 2023." (Pl. 75.)[6] Plaintiff did not report any of these incidents to anyone at the County except Turner. (Pl. 43-44.)[7] It is undisputed that Turner never told the Sheriff about any sexual harassment allegedly reported by Plaintiff. (Washington 94; Turner 67, 117.)

### C. The Sheriff Restructures Community Outreach in the WCSO

Having been reelected in 2024, the Sheriff decided to restructure some functions in the WCSO, including community outreach. (Washington 185-186; Turner 40–42.) The Sheriff wanted to expand the WCSO's community outreach, so he implemented a team approach, having three employees join Plaintiff to form a team of four. (Washington 187-188.) Since Plaintiff would be working as part of a team, it did not make sense for Plaintiff to retain a "Director" title (particularly when she had never "directed" anyone to begin with). (*See id.* at 195.) The Sheriff relocated Plaintiff from her office to a cubicle because he wanted the new team

---

[6] The Sheriff categorically denies all of the foregoing alleged harassment. (Washington 263–266, 270-272.)

[7] Turner denies Plaintiff complaining to him about the Sheriff's behavior. (Turner 62, 67.)

"working jointly together." (*Id.* at 200.)[8] The Sheriff held a meeting on November 13, 2024 to discuss the restructuring and inform the relevant team members of these changes. (Pl. 76, 230-231.)[9]

### D. Plaintiff's Inappropriate Outburst in the Executive Suite

After the meeting, Plaintiff went to the executive suite to see Turner before she left for the day. (Pl. 229-230, 241.) Turner was not there at the time, but WCSO employees Danielle Stephens, Rashidah Gamble, and Rashaun Whitehead were. (Pl. 240–241.)

According to Whitehead, Gamble, and Stephens, Plaintiff was visibly upset. (**Ex. 7**, Witness Statements). She was pacing, yelling, and swearing, saying, "I don't give a fuck." (*Id.*) Gamble saw Plaintiff slap her vaginal area while saying "I do not need this shit! I have this!" (*Id.* at 1.) Stephens also saw Plaintiff touch her genital area, but could not make out what Plaintiff was saying when she did so. (*Id.* at 4.)

Plaintiff admits she was agitated, and admits saying "I don't give a fuck" at least once, as well as "I don't need this shit." (Pl. 238, 243, 245–246.) Plaintiff denies slapping her vaginal area. (*Id.*)

After the incident in the executive suite, Plaintiff went home for the day. Turner and Plaintiff spoke on the phone, and Plaintiff expressed her frustration to

---

[8] The Sheriff also relocated Erica Hill from an office to a cubicle at the same time for the same reason. (Pl. 143.)

[9] Plaintiff was also reappointed and received a raise that day. (*See* **Ex. 6**.)

him about the restructuring. (Pl. 154-155, 249-253; Washington 208:21-25, 209:2-11.)

The Sheriff called Turner and asked him to speak to Plaintiff and find out what happened, because she was going to be terminated the next day. (Washington 208–209.) Turner agreed and called Plaintiff. Plaintiff testified that Turner told her she needed to apologize to the Sheriff or the Sheriff was going to fire her. (Pl. 156.)[10] Plaintiff replied that she would not apologize to the Sheriff. (*Id.*; *see also* Washington 209.) Turner informed the Sheriff that he had spoken to Plaintiff, that he had asked her to apologize and she refused. (Washington 209.) Plaintiff did not say she did not do it; she said, 'no, I'm not going to apologize for it.' (*Id.*)

Shortly after 9 p.m. that same evening, Plaintiff and Whitehead spoke on the phone. (Whitehead 67–68; **Ex. 7** at 3.) During their call, Plaintiff told Whitehead that she had a recording of the Sheriff hitting on Plaintiff. (*Id.*)

After hanging up with Plaintiff, Whitehead called the Sheriff. (Whitehead 68.) Whitehead asked the Sheriff if he had hit on Plaintiff. (*Id.*) The Sheriff said no. (*Id.*) Whitehead then asked the Sheriff if Plaintiff had any reason to have him recorded. (*Id.* at 68–69.) Again, the Sheriff said no. (*Id.*; *see also* Washington 214, 217.)

Plaintiff was informed of her unappointment the next day, which was effective

---

[10] The Sheriff testified that Plaintiff would have been fired regardless of whether she apologized for her unbecoming conduct. (Washington 209:12–15.)

-8-

November 15, 2024. (*See* **Ex. 8**.)[11]

### III.  STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is 'genuine' 'if the evidence is such that a reasonable jury could return a verdict for the non-moving party.'" *Anwar v. Dow Chem. Co.*, 876 F.3d 841, 851 (6th Cir. 2017). To that end, the nonmovant may not rely on mere allegations in her pleadings, but must support her allegations by "citing to particular parts of materials in the record." Fed R. Civ. P. 56(c)(1)(A). The nonmovant "must do more than show that there is some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos.*, 8 F.3d 335, 340 (6th Cir. 1993). A mere scintilla of evidence "is insufficient to defeat summary judgment." *Hall v. Sky Chefs, Inc.*, 784 F. Supp. 2d 811, 819 (E.D. Mich. 2011).

### IV.  LEGAL ARGUMENT

#### A. Plaintiff's Retaliation Claims Cannot Succeed.

*1. Plaintiff Cannot Establish a Prima Facie Case of Retaliation.*

In the absence of direct evidence, as is the case here, Plaintiff must first establish a *prima facie* case of retaliation: "(1) she engaged in statutorily protected activity; (2) defendant knew she engaged in the activity; (3) she suffered an adverse

---

[11] Director of Administration Venita Terry, who serves as HR for the WCSO, conducted Plaintiff's exit meeting. (Pl. 49, 162.) Plaintiff did not express any concerns of alleged harassment or retaliation during that one-on-one meeting. (*Id.*)

employment action or was subjected to retaliation by a supervisor; and (4) the adverse action or harassment was causally related to the protected activity." *Russell v. Bronson Heating & Cooling*, 345 F. Supp. 2d 761, 785 (E.D. Mich. 2004). If Plaintiff can establish a *prima facie* case, the burden then shifts to the County to articulate a legitimate, nonretaliatory reason for the adverse action, which Plaintiff must show was pretext for unlawful retaliation. *Id.*

Here, Plaintiff's *prima facie* case fails at the second and fourth prongs. First, Plaintiff cannot establish that the Sheriff, the undisputed decisionmaker, knew about the alleged protected activity. "The decisionmaker's knowledge of the protected activity is an essential element of the *prima facie* case of unlawful retaliation." *Frazier v. USF Holland, Inc.*, 250 F. App'x 142, 148 (6th Cir. 2007). "A plaintiff cannot establish the second element of the *prima facie* case of retaliation merely by showing that the defendant had 'general corporate knowledge' of the alleged protected activity; she must show that the decisionmaker knew of her involvement in the protected conduct." *Keller v. Clean Harbors, Inc.*, No. CV 17-11807, 2019 WL 5800290, at *7 (E.D. Mich. Apr. 30, 2019).[12]

There is no evidence the Sheriff knew about Plaintiff's alleged reports of sexual harassment to Turner when he changed Plaintiff's title. There is no evidence the Sheriff knew about Plaintiff's alleged reports to Turner when he relocated her

---

[12] Unpublished opinions are attached collectively as **Ex. 9**.

workspace. Finally, there is no evidence the Sheriff knew about Plaintiff's alleged reports to Turner when he unappointed her.

To the extent Plaintiff telling her coworkers she had a recording of the Sheriff hitting on her constitutes protected activity under Title VII or the ELCRA, which the County respectfully submits it does not, it is undisputed that the Sheriff did not know about any such alleged recording when he changed Plaintiff's title. It is undisputed that the Sheriff did not know about any such alleged recording when he relocated Plaintiff's workspace.

It is undisputed that the Sheriff first learned about the potential existence of the alleged recording in the context of being informed about Plaintiff's inappropriate behavior in the workplace. Knowledge that a recording *might* exist that *might* contain sexual harassment does not constitute knowledge of legally protected activity. *See Keller*, 2019 WL 5800290, at *7 ("Circumstantial evidence can support a reasonable inference of the decisionmaker's knowledge if the evidence is comprised of specific facts and *not* merely *conspiratorial theories*, flights of fancy, *speculations*, hunches, intuitions, or *rumors*.") (emphases added).

Moreover, Plaintiff's misconduct breaks any causal nexus that might otherwise exist between her alleged protected activity and her unappointment. *Kenney v. Aspen Techs., Inc.*, 965 F.3d 443, 450 (6th Cir. 2020) ("an intervening cause between protected activity and an adverse employment action dispels any

-11-

inference of causation"). For example, in *Kenney*, the Sixth Circuit held that the plaintiff's own behavior was an intervening cause sufficient to justify her termination without finding retaliation where other employees filed complaints about her and even quit. *Id.* Plaintiff's outburst similarly breaks any causal connection between her alleged protected activity and her unappointment. Like in *Kenney*, Plaintiff's coworkers complained about her unprofessional and unbecoming conduct. *See also Wright v. Cellular Sales Mgmt. Group, LLC*, 793 F. App'x 409, 411 (6th Cir. 2019) (where plaintiff got in a public shouting match with a coworker, the employer "had an intervening legitimate reason to discipline [her], and that reason dispels an inference of retaliation based on temporal proximity.")

Because Plaintiff cannot show the Sheriff had knowledge of any alleged protected activity when he made the employment decisions at issue, and Plaintiff cannot demonstrate a causal connection between any alleged protected activity and the challenged employment decisions, Plaintiff cannot establish a *prima facie* case of retaliation. The County is entitled to summary judgment in its favor.

> 2. *Plaintiff Cannot Show that the County's Reason for Terminating her Employment – Her Unprofessional and Unbecoming Conduct in the Workplace – Was Pretext for Unlawful Retaliation.*

Even if Plaintiff could establish a *prima facie* case of retaliation, she cannot show that the reason for unappointing her was pretext for unlawful retaliation. There is no genuine dispute of <u>material</u> fact regarding Plaintiff's unappointment or the

-12-

reason for that unappointment, because the following facts are ***not*** disputed:

(1) It is undisputed that the Sheriff was not present during Plaintiff's outburst. (Washington 207.)

(2) It is undisputed that the Sheriff decided to unappoint Plaintiff not based on *what actually happened* in the executive suite but based on *what was reported to him.* (*See id.*)

(3) It is undisputed that the Sheriff received reports that Plaintiff was yelling and screaming, pacing, ranting, raving, and patting her vagina. (*Id.* at 206-207; *see also* Ex. 7.)

(4) It is undisputed that when the Sheriff received that information about Plaintiff's behavior, he determined Plaintiff should no longer work at the County and decided to unappoint her. (Washington 207.) *See Upshaw v. Ford Motor Co.*, 576 F.3d 576, 586 (6th Cir. 2009) ("If the employer had an honest belief in the proffered basis for the adverse employment action, and that belief arose from reasonable reliance on the particularized facts before the employer when it made the decision, the asserted reason will not be deemed pretextual even if it was erroneous.")

*What actually happened* in the executive suite is not material to Plaintiff's retaliation claims because the unappointment was not based on *what actually happened* but, rather, based on *what the Sheriff was told about what happened*. The

-13-

Sheriff reasonably determined that separation from employment was warranted based on the information he received. *Majewski v. Automatic Data Processing, Inc.*, 274 F.3d 1106, 1117 (6th Cir. 2001) ("An employer has an honest belief in its reason for discharging an employee where the employer reasonably relied on the particularized facts that were before it at the time the decision was made.")

Plaintiff's testimony that she did not actually misbehave in the executive suite or cause a scene does not establish pretext. *Blizzard v. Marion Tech. Coll.*, 698 F.3d 275, 286 (6th Cir. 2012) ("To overcome . . . the honest belief rule, the employee must allege more than a dispute over the facts upon which the discharge was based. [S]he must put forth evidence which demonstrates that the employer did not honestly believe in the proffered [ ] reason for its adverse employment action."). Plaintiff has no evidence that anything other than her own misconduct motivated her unappointment.

Plaintiff cannot show that the reason for her unappointment was pretext for unlawful retaliation, and, therefore, Plaintiff's retaliation claims fail, and the County is entitled to summary judgment in its favor.

### A. Plaintiff's Hostile Work Environment Claims Fail.

To establish her sexual harassment HWE claims under Title VII and ELCRA, Plaintiff "must show: (1) she was a member of a protected class; (2) she was subjected to unwelcomed harassment; (3) the harassment was based on sex[ ]; (4)

-14-

the harassment created a hostile work environment; and (5) employer liability." *Wyatt v. Nissan N. Am., Inc.*, 999 F.3d 400, 411 (6th Cir. 2021) (internal citation and quotation marks omitted); *Sheridan v. Forest Hills Pub. Schs.*, 247 Mich. App. 611, 620–621 (2001). With respect to the fifth element, under Title VII, if the alleged harasser is a supervisor, and "the supervisor's harassment culminates in a tangible employment action, the employer is strictly liable." *Wyatt*, 999 F.3d at 412. If, on the other hand, the supervisor's harassment does ***not*** culminate in a tangible employment action, the employer may avoid liability by establishing an affirmative defense under the *Faragher-Ellerth* framework. *Id.* "Under the ELCRA an employer may avoid liability [in a hostile environment case] if it adequately investigated and took prompt and appropriate remedial action upon [actual or constructive] notice of the alleged hostile work environment," whether the accused is a coworker or supervisor. *Beaver v. Macomb Cnty.*, No. 2:21-CV-10750-TGB-EAS, 2025 WL 975468, at *24 (E.D. Mich. Mar. 31, 2025).

Here, Plaintiff's HWE claims fail. Preliminarily, the alleged harassment does not rise to the level of a HWE as a matter of law. However, even if Plaintiff were able to establish that she experienced a HWE (which she did not), Plaintiff cannot establish employer liability. For purposes of her Title VII claim, Plaintiff cannot hold the County strictly liable because the alleged harassment did not culminate in a tangible employment action, and Plaintiff cannot establish *respondeat superior*

liability because the County satisfies both prongs of the *Faragher-Ellerth* affirmative defense. Finally, Plaintiff cannot establish County liability under the ELCRA because she failed to put the County on notice of the alleged harassment.

>    *1. To the Extent Plaintiff Relies on Alleged Incidents that Occurred Before February 2022, Those Claims Are Time-Barred.*

Any alleged incidents that occurred before February 2022 occurred outside the applicable statute of limitations. Because such incidents are time-barred, they cannot serve as a basis for liability and are legally irrelevant. *Rouch World, LLC v. Dep't of Civ. Rights*, 510 Mich. 398 (2022). Moreover, any alleged incidents before February 2022 are isolated, remote in time, and unrelated to any *timely* alleged conduct. *Garg v. Macomb Cnty. Community Mental Health Servs.*, 472 Mich. 263 (2005). Permitting Plaintiff to rely on any untimely allegations occurring before February 2022 would effectively circumvent the statute of limitations and improperly revive a time-barred claim.

>    *2. The Alleged Harassment Does Not Rise to the Level of a HWE*

In order to constitute a HWE, conduct must be "severe or pervasive enough to create an objectively hostile or abusive work environment—an environment that a reasonable person would find hostile or abusive." *Wyatt*, 999 F.3d at 411. In determining whether harassment rises to the level of a HWE, courts consider an inexhaustive list of factors, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive

utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* Conduct is more likely to be "pervasive" when it is continuous rather than sporadic, and "physical invasion is more severe than harassing comments alone." *Id.*

Here, Plaintiff identified twelve incidents of alleged harassment, but they occurred over the course of nearly four years. These incidents, both in sum and substance, do not rise to the level of a HWE. *See, e.g., Clay v. UPS, Inc.*, 501 F.3d 695, 707–08 (6th Cir. 2007) (affirming summary judgment where "fifteen specific incidents spanning a two-year period were isolated and were not pervasive"); *Bowman v. Shawnee State Univ.*, 220 F.3d 456, 458–59, 464 (6th Cir. 2000) (concluding that five instances of harassing conduct, including a supervisor's grabbing the plaintiff's buttocks and saying that "she controlled [the plaintiff's] ass and she would do whatever she wanted with it," did not constitute severe or pervasive harassment); *Nathan v. Great Lakes Water Auth.*, 992 F.3d 557, 568 (6th Cir. 2021) ("[Plaintiff] has evidence of only five instances of sex-based harassment over a roughly fifteen-month period of time. This court has found comparable patterns of harassment insufficient to survive summary judgment in the past.").

Moreover, the alleged harassment did not prevent, impede, or impair Plaintiff from performing her job. Plaintiff continued working despite the alleged harassment, purportedly reporting it to only, her on-again/off-again lover, Turner. Indeed, the

last incident of alleged harassment occurred on October 31, 2023, more than a year before Plaintiff's unappointment. Considering the totality of the circumstances, the alleged harassment does not rise to the level of a HWE as a matter of law.

### 3. The County is Not Liable for the Alleged HWE under Title VII.

#### a) The Alleged Harassment Did Not Culminate in a Tangible Employment Action

Even if Plaintiff could establish a HWE, Plaintiff cannot establish County liability under Title VII. Plaintiff cannot establish *strict* liability because she cannot show that "the supervisor's harassment culminate[d] in a tangible employment action." *Wyatt*, 999 F.3d at 412. A tangible employment action is "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Schlosser v. VRHabilis, LLC*, 113 F.4th 674, 689 (6th Cir. 2024).

Here, Plaintiff's unappointment does not constitute a tangible employment action for purposes of her HWE claim because there is no causal connection between the alleged harassment and her unappointment. Plaintiff concedes that the last incident of alleged harassment occurred on October 31, 2023. (Pl. 75.) Plaintiff was unappointed more than a year later. The harassment cannot have *culminated* in Plaintiff's unappointment when the harassment was long over by the time the unappointment occurred.

Moreover, neither removing Plaintiff's Director title nor relocating her workspace to a cubicle constitutes a tangible employment action under these circumstances. "Removing" the Director title was not a demotion since Plaintiff had never directed anyone or anything to begin with. (Washington 195.) The restructuring presented a reasonable opportunity to _correct_ her title so that it accurately reflected what the reality of her position and job duties had always been. Her office was not taken away as a punishment. Rather, the Sheriff relocated Plaintiff to a cubicle so that she and her new team members could effectively and efficiently collaborate and work together. (_Id._ at 200.) Hill also relocated from an office to a cubicle – Plaintiff was not singled out. (_See_ Pl. 143.) Most importantly, Plaintiff lost no pay or benefits in the restructuring. (Pl. 79.) On the contrary, she received a raise.

Because the alleged harassment did not culminate in a tangible employment action, the County is not strictly liable for the alleged HWE.

> **b)** **The County Exercised Reasonable Care to Prevent and Correct Any Harassing Behavior, and Plaintiff Unreasonably Failed to Take Advantage of the Preventative or Corrective Opportunities the County Provided.**

In the absence of strict liability, the County can avoid liability under Title VII entirely if it can establish the _Faragher-Ellerth_ affirmative defense. To do so, the County must show that (1) it exercised reasonable care to prevent and correct any harassing behavior and (2) that Plaintiff unreasonably failed to take advantage of the preventive or corrective opportunities that the County provided. _Clark v. UPS, Inc._,

400 F.3d 341, 348 (6th Cir. 2005) (citing *Faragher v. City of Boca Raton*, 524 U.S. 775, 806–08 (1998)).

The first element assesses whether the employer had a reasonable sexual harassment policy and whether such policy was effective in practice, requiring an inquiry that looks beyond the face of the policy to determine whether the policy was effective in practice in reasonably preventing and correcting any harassing behavior. *Id.* at 349–350. "While there is no exact formula for what constitutes a 'reasonable' sexual harassment policy, an effective sexual harassment policy "should at least: (1) require supervisors to report incidents of sexual harassment; (2) permit both informal and formal complaints of harassment to be made; (3) provide a mechanism for bypassing a harassing supervisor when making a complaint; and (4) and provide for training regarding the policy." *Id.* (internal citations omitted).

The County's sexual harassment policy in its Employee Handbook meets these factors, providing in relevant part:

> To the extent possible, efforts should be made to settle all harassment complaints within the department using the informal procedure. **The employee should go to his or her supervisor, or the next level of supervision in the department or to P/HR. The person taking the complaint will use whatever steps are necessary to resolve it.** If the matter is not resolved in the **informal procedure, or if the complaint is so serious that the person wishes to bypass the informal procedure, the employee may make a formal complaint by filing a written statement with the Department Head or the Director of Personnel/Human Resources**. The complaint will be handled using a system of formal steps and investigation that have been designed for handling such complaints. **If you believe you have been subjected to**

**sexual or other harassment, you may report your concerns or file a complaint with a supervisor in your Department, your Department Head, or the Director of Personnel/Human Resources**.
(**Ex. 10**, Employee Handbook, p. 17.)

County employees receive County policies upon hiring, including the County's Employee Handbook. (*See* **Ex. 11**.) Plaintiff acknowledged that the Employee Handbook contains important information, agreed to read the entire Handbook, and to abide by its policies and procedures. (*Id.*) Plaintiff also acknowledged receiving the County's Harassment Policy. (*Id.*)

In furtherance of those policies, the County conducts sexual harassment trainings, the most recent of which occurred less than a year before the Sheriff's deposition in this case. (*See* Washington 84-85.)

c)      **Plaintiff Unreasonably Failed to Take Advantage of the Preventive or Corrective Opportunities that the County Provided**

The second element of the *Faragher-Ellerth* defense assesses whether the employee unreasonably failed to utilize any of the corrective opportunities provided by the sexual harassment policy, such as complaining to a designated agent or calling the hotline to report incidents of harassment. *Wyatt*, 999 F.3d at 415-16 ("In evaluating a plaintiff's conduct, we look at how and when a plaintiff uses the company's existing corrective and protective measures.").

Here, Plaintiff unreasonably failed to utilize the corrective opportunities provided by the County. Under the County's policy, Plaintiff could have reported

-21-

the alleged harassment to several different individuals. Plaintiff testified that she complained to Turner (and only Turner), despite Turner taking no action. (Pl. 43.) A reasonable person in Plaintiff's shoes would have taken further action once it appeared that Turner was not going to do anything, such as reporting her concerns to another resource at the County, as provided for in the County's policy. (Ex. 10 at 17.) Indeed, the policy specifically invites employees to make a formal complaint or file a written statement with the Department Head or the Director of Personnel/HR if the employee's concerns are not resolved informally or if the employee wishes to bypass the informal procedure. (*Id.*) There is no legitimate reason Plaintiff could not have gone to Terry or WCSO Director of Personnel Lakeisha Solomon. (Whitehead 34–35, 138.) Put differently, Plaintiff could have – and should have – explored one of the many other avenues for relief provided for in the policy, including reporting to the County's central Personnel/HR Department. Instead, Plaintiff allegedly kept reporting the alleged harassment to Turner – her casual sexual partner. (Pl. 37, 40, 43-44.) By refusing to report her concerns to Terry, Solomon, or another available resource at the County, Plaintiff effectively prevented the County from addressing the alleged harassment.[13]

---

[13] Although a plaintiff's fear of retaliation can, under certain circumstances, alleviate the duty to report harassment, *see, e.g.*, *Wyatt*, 999 F.3d at 416 (holding that the plaintiff "'was under a credible threat of retaliation' that alleviated her duty to report [the supervisor's] behavior" where the plaintiff lacked corroborating witnesses and her harasser's "comments and behaviors made her fear negative employment

-22-

### 4. The County is Not Liable Under the ELCRA Because it Did Not Have Notice of the Alleged Hostile Work Environment

"Under the ELCRA an employer may avoid liability [in a hostile environment case] if it adequately investigated and took prompt and appropriate remedial action upon [actual or constructive] notice of the alleged hostile work environment," whether the accused is a coworker or supervisor. *Beaver*, 2025 WL 975468, at \*24. To put an employer on actual notice of sexual harassment, an employee must lodge a complaint with "higher management," "meaning someone in the employe[e]'s chain of command who possesses the ability to exercise significant influence in the decision-making process of hiring, firing, and disciplining the offensive employee." *Sheridan*, 247 Mich. App. at 621-22. "Constructive notice can be shown where the harassment was so pervasive as to warrant an inference that the employer had actual knowledge or to charge the employer with constructive knowledge." *Beaver*, 2025 WL 975468, at \*25. "[T]he relevant inquiry concerning the adequacy of the employer's remedial action is whether the action reasonably served to prevent

_____

consequences if she '[did not] give in to his sexual advances'"), that is not the case here. Plaintiff did not articulate any reasonable basis for her alleged fear beyond "You got to remember, we are appointees, and he's our boss." (Pl. 49.) Plaintiff did not report the alleged harassment to Solomon because Plaintiff "never looked at her . . . as being HR at all" and "never felt like [she] could come to her with that complaint." (Pl. 48–49.) In terms of Terry, Plaintiff did not feel that she could bring her concerns to her because Plaintiff "didn't have a relationship with her where [she] felt like [she] could come to her." (*Id.*) Any alleged fear of retaliation is also illogical; Plaintiff claims to have extensive knowledge of alleged harassment reported by other women, such as Solomon, who remained employed with the County. (*Id.*)

-23-

future harassment of the plaintiff." *Chambers v. Trettco, Inc.*, 463 Mich. 297, 319 (2000). The employer will be liable for a HWE claim under the ELCRA "only if it failed to take prompt and adequate remedial action after having been reasonably put on notice of the harassment." *Marquis v. Tecumseh Prods. Co.*, 206 F.R.D. 132, 168-69 (E.D. Mich. 2002).

Importantly, "if an employee is sexually harassed in the workplace, it is that employee's choice whether to pursue the matter. In other words, the victim of harassment 'owns the right' whether to notify the company and start the process of investigation." *Elezovic v. Ford Motor Co.*, 472 Mich. 408, 427–28 (2005) (holding that "plaintiff's telling two supervisors in confidence about one instance of Bennett's improper conduct does not constitute notice, **notwithstanding Ford's policy that required the supervisors to report the information to [HR] personnel**") (emphasis added). "Until the employee takes appropriate steps to start the process, it is not started." *Id.* If "an employee requests confidentiality in discussing workplace harassment, and the request for confidentiality is honored, such a request is properly considered a waiver of the right to give notice." *Id.*

Here, it is undisputed that Plaintiff was in a secret sexual relationship with Turner during Plaintiff's employment. (Pl. 37, 40.) It is also undisputed that Plaintiff was Turner's subordinate, and Turner was Plaintiff's supervisor during that sexual relationship. Finally, to the extent we must accept as true Plaintiff's testimony that

-24-

she reported the alleged sexual harassment to Turner (for purposes of this Motion only), it is undisputed Turner took no action in response to those reports.

Perhaps Turner feared an investigation would reveal his own transgression with Plaintiff. Perhaps he interpreted Plaintiff as confiding personal concerns to him as an intimate partner, not reporting workplace concerns to him as supervisor. No matter the reason, Plaintiff knew Turner was not acting, and with that knowledge she continued reporting the alleged harassment to him and him alone. Plaintiff, as the owner of her right to notify her employer under *Elezovic*, consciously chose not to report the harassment to anyone else. (*See* Pl. 43-44.) Thus, even if Plaintiff reported alleged harassment to *Turner*, Plaintiff did not report alleged harassment to *her employer – the County*. On the contrary, her testimony demonstrates she elected not to. Since the County lacked notice of the alleged harassment, Plaintiff's ELCRA HWE claim fails.

## V.    CONCLUSION

WHEREFORE, the County respectfully requests the Court grant its Motion for Summary Judgment in its entirety and enter judgment in its favor.

Dated: January 14, 2026                     Respectfully submitted,

                              */s/ Aaron V. Burrell*
                              Aaron V. Burrell (P73708)
                              DICKINSON WRIGHT PLLC
                              500 Woodward Ave., Suite 4000
                              Detroit, MI  48226; 313-223-3500
                              aburrell@dickinsonwright.com
                              *Attorneys for Wayne County*

-25-

## <u>CERTIFICATE OF SERVICE</u>

I certify that on January 14, 2026, I electronically filed the foregoing *Defendant Wayne County's Motion for Summary Judgment and Brief in Support of Motion for Summary Judgment* with the Clerk of the Court using the ECF system, which will send notification of such filing to all parties of record.

 */s/ Ann C. Helms*

Legal Secretary
DICKINSON WRIGHT, PLLC
500 Woodward Avenue, Suite 4000
Detroit, Michigan 48226-3425
(313) 223-3500
ahelms@dickinsonwright.com

4898-8580-1605 v7 [9731-77]

-26-